SHELTER MUTUAL INSURANCE COMPANY *v.* Alice
M. TUCKER

87-217                                      748 S.W.2d 136

Supreme Court of Arkansas
Opinion delivered April 18, 1988

*Goodwin, Hamilton & Moore*, for appellant.

*Branch, Thompson & Philhours*, for appellee.

TOM GLAZE, Justice. Appellee was in her automobile when she was struck from behind by another car driven by an uninsured motorist, Sheila Smith. Appellee, having uninsured motorist coverage with the appellant insurance company, subsequently filed suit against both Smith and the appellant. At trial, appellee received a jury verdict of $25,000.00, the maximum amount due under her policy, plus $9,979.70 in medical expenses. The court further awarded appellee a 12% penalty plus attorney's fee in the sum of $12,500.00. Appellant raises four issues on appeal, but we find that none warrant a reversal. Therefore, we affirm.

Appellant first argues the trial court erred in granting appellee's motion in limine thereby excluding evidence that appellee was not wearing her seat belt at the time of the collision. Such evidence was developed at the pre-trial evidentiary deposition of Dr. George Wood. Dr. Wood testified that the appellee reported she was not wearing her seat belt at the time of the accident, and when hit by Smith's car, she was thrown against the dashboard, which resulted in complaints by her of back and neck pain.

Pertinent to the point argued here, appellant refers to and emphasizes the following testimony given by Dr. Wood which was proffered but excluded at trial:

> Q: Based on the report of the manner of the sustaining of the injury and her report to you and her history that she had not worn a seat belt, in your opinion, did the failure to wear the seat belt result in more severe physical injuries or trauma than would have happened if she had been wearing her seat belt?

> A: The absence of a seat belt makes her more of a free object and can result in other injuries. It probably makes no difference as far as the neck is concerned because that's never restrained by the seat belt. For the lower portion of the body, it does make it more prone to be thrown about.

* * *

Q: Is it a fair statement to say that testimony in that regard is sheer speculation and conjecture relative to what injuries she may or may not have received?

A: To specifically say what would happen if she was wearing a seat belt would be extremely hard to imagine. As I mentioned before with regard to the neck, the seat belt probably had no effect. With regard to the back, it may have had an effect, and then again it may not. With this problem, relatively minor trauma can excite it; and minor trauma can occur within the confines of a seat belt.

Q: Let me rephrase my question because of the objection. Would you have to resort to speculation and conjecture to testify relative to an increase or decrease in this injury when you factor in a seat belt?

A: Yes.

Immediately before the above testimony, Dr. Wood opined that the spinal stenosis he found in appellee's low back or lumbar region was not caused by the automobile accident. Relying on Wood's testimony, as well as statements made by this court in *Harlan* v. *Curbo*, 250 Ark. 610, 446 S.W.2d 459 (1971), appellant contends that appellee's nonuse of her seat belt was evidence of comparative negligence and admissible as such. Alternatively, appellant asserts such evidence should be admissible on the issue of mitigation of damages. Even if appellant's legal arguments concerning the nonuse of seat belts had merit, we need not reach them since they cannot be supported by the speculative nature of the proffered testimony given by Dr. Wood.

Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. A.R.E. Rule 401. The trial court has discretion in ruling on the relevance of evidence and will not be reversed in the absence of an abuse of discretion. *See, e.g., Jim Halsey Co.* v. *Bonar*, 284 Ark. 461, 683 S.W.2d 898 (1985). In the instant case, the relevance, if any, of Wood's testimony would be to connect appellee's nonuse of her seat belt with the

injuries she sustained. Concerning this issue, his testimony is nothing but confusing; he even conceded that he would have to resort to speculation and conjecture to testify relative to the increase or decrease in appellee's injury when "you factor in a seat belt."

In its second point for reversal, appellant alleges the trial court erred in failing to direct a verdict on the issue of medical expenses. Citing the case of *Henry and Aclin Ford* v. *Landreth*, 254 Ark. 483, 494 S.W.2d 114 (1973), appellant claims the appellee improperly introduced medical bills into evidence without proof that they were reasonable or that the bills were incurred as a result of the accident.

As we pointed out in *Bell* v. *Stafford*, 284 Ark. 196, 680 S.W.2d 700 (1984), a party seeking to recover medical expenses in a personal injury case has the burden of proving both reasonableness and necessity of those expenses. However, expert medical testimony is not essential in every case to prove the reasonableness and necessity of medical expenses. *Id*. We added further in *Bell* that the testimony of the injured party alone, in some cases, can provide a sufficient foundation for the introduction of medical expenses incurred. *Id*. at 199 and 680 S.W.2d at 702; *see also Eggleston* v. *Ellis*, 291 Ark. 317, 724 S.W.2d 462 (1987). We have also held that, while not controlling, evidence of expense incurred is some evidence of reasonableness. *Blissett* v. *Frisby*, 249 Ark. 235, 458 S.W.2d 735 (1970).

In the cases cited above, the issue on appeal was the admissibility of medical bills and whether the plaintiff laid a sufficient foundation to establish a casual relationship between the accident and those medical expenses claimed by the plaintiff. Here, appellee identified all of the medical bills introduced at trial as having been incurred as a result of her back injury. Appellant offered no objection to the bills or appellee's testimony concerning them.

Although Dr. Wood was not requested to identify or justify the causal nature or reasonableness of appellee's medical bills, his testimony does support the legitimacy of many of those bills. For example, on August 27, 1984, he admitted the appellee into the hospital for testing and routine laboratory studies and did not discharge her until September 8, 1984. While appellant

contends on appeal that the testimony of appellee's doctor reflects she was a hypochondriac and exaggerated her complaints, appellant did not question below the admissibility of the medical expenses presented by the appellee on these or any other grounds. In addition, it is settled law that the trial judge has discretion in deciding whether a witness has laid a sufficient foundation to testify about reasonableness and causal relationship. Even if the trial judge had been called on to rule on the admissibility of appellee's medical expenses, we believe, given the record before us, the judge would have been well within his discretion to have admitted the medical bills into evidence.

For its third asserted error, appellant claims the trial court erred in allowing appellee to introduce the deposition of Dr. Larry E. Mahon. Appellant asserts that it objected below to the deposition's introduction by stating that none of the conditions prescribed in ARCP Rule 32(a)(3) governing the use of depositions in court had been met by the appellee. Appellee, on the other hand, argues that, in preparation for trial, the appellant decided that it needed to take Dr. Mahon's "evidentiary deposition" for use at trial and that the parties had waived any restrictions posed under Rule 32.[1] Appellee also suggests that since the appellant had instituted the taking of Mahon's "evidentiary deposition" and was represented when the doctor's testimony was given, Rule 32(a)(1) permitted the deposition's introduction. In overruling the appellant's objection, the trial judge's ruling was broadly stated as follows:

> I think anything that you take in a deposition, discovery or evidentiary purposes, of a witness having knowledge or information regarding the subject matter of the trial, and particularly as in this case he is an expert witness, develop and then take the deposition of that expert witness and then for any reason decide it is not beneficial or to your advantage to use that witness, then the opposing party has a right at that time to call that witness.

---

[1] While we recognize it may be customary for some members of the Bar to use the designation "evidentiary deposition," such designation is found nowhere in the Arkansas Rules of Civil Procedure, and the mere reference to a deposition as being evidentiary is no reason, in itself, for a deposition to be introduced at trial.

While we agree that the trial judge was correct in overruling the appellant's objections, we cannot agree with his reasoning since the rationale he gave conflicts with the restrictions and dictates of Rule 32. That rule in pertinent part provides:

> (a) Use of depositions. At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:
>
> (1) Any deposition may be used by any party for the purpose of contradicting or impeaching the testimony of deponent as a witness or for any other purpose permitted by the Uniform Rules of Evidence, Ark. Stat. Ann. § 28-1000.
>
> * * *
>
> (3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: (A) that the witness is dead; or (B) that the witness is at a greater distance than 100 miles from the place of trial or hearing, or is out of this state, unless it appears that the absence of a witness was procured by the party offering the deposition; or (C) that the witness is unable to attend or testify because of age, illness, infirmity, or imprisonment; or (D) the party offering the deposition has been unable to procure the attendance of the witness by subpoena; or (E) upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used.

Rule 32 is essentially the same as Fed. R. Civ. P. 32, which has been construed to point out that any party, not only the party who took the deposition, may use the deposition of a witness, whether or not a party, for any purpose at the trial or hearing, if the party demonstrates to the court the existence of one of the conditions specified in Rule 32(a)(3). *See* 4A Moore's

Federal Practice ¶ 32.05 (1987). In the instant case, it is undisputed that none of the conditions set out in Rule 32(a)(3) were present to justify the use of Dr. Mahon's deposition at trial. Nor, as is permitted under Rule 32(a)(1), was Mahon's deposition offered at trial for the purpose of contradicting or impeaching his testimony as a witness; he never appeared at trial as a witness for either party. In sum, the appellant's use of Dr. Mahon's deposition does not fit any of the purposes set out in Rule 32(a), and if the trial court's ruling is to be sustained, it must be done based on other reasoning.

We have carefully reviewed the record, and the conclusion is inescapable that counsel for appellant and appellee determined they needed to obtain an "evidentiary deposition" of both Dr. Mahon and Dr. George Wood. Appellee's counsel states that, by stipulation and agreement of the parties, the doctors' depositions were evidentiary and taken to be utilized as evidence in the case. Appellant's counsel was less certain about such an agreement as to Dr. Mahon's deposition, saying "[T]here may be somewhere, but I don't recall any discussions specifically as to whether it would be evidentiary or by way of discovery." He added that such a decision or agreement may have been reached with regard to Dr. Wood's deposition, which had been taken at appellee's expense. In fact, appellant's main concern at trial, when arguing that appellee should be prohibited from introducing Mahon's deposition as a part of her case, was that appellee was required to reimburse the appellant its expenses for having been the party that took Mahon's deposition. Without such a reimbursement and agreement to use the deposition, appellant argued appellee could not use it at trial.

Our examination of the record reflects that both parties took Wood's and Mahon's depositions with the view that both depositions would be presented to the jury when this cause was tried. Both counsel directed their questions to the jury when inquiring of the doctors at the time their depositions were taken. Each attorney was careful to pose questions to, and amplify on answers given by, the doctors so the jury would understand their deposition testimony. In this respect, appellant's counsel (as did appellee's) repeatedly asked each doctor to explain to the jury the medical terms and remarks that were a part of the doctors' testimonies. We also note that throughout both doctors' deposi-

tions, the parties' counsel interposed objections, including those to leading questions, which were reserved to be ruled on at trial.

At trial, appellant offered no objection to the introduction of Wood's deposition, obviously because appellant relied on that deposition in presenting its case below. Appellant later in the proceeding, objected to the admission of Mahon's deposition, but even then, appellant indicated that it still might use Mahon's deposition when presenting its defense. As to this last point, surely if Rule 32 precluded the appellee's use of Mahon's deposition at trial, those same proscriptions in the Rule would apply to the appellant's use of it.

■ Rule 32(b) provides that an objection may be made at the trial or hearing to receiving into evidence any deposition or part thereof for any reason which would require the exclusion of the evidence if the witness was then present and testifying. Nonetheless, that Rule does not prohibit the parties to agree, as the record reflects the parties—either expressly or impliedly—did here, to use depositions, thereby waiving those conditions or restrictions set forth in Rule 32(a). Because the record before us so clearly reflects that the parties took both doctors' depositions with the intent that the testimony would be introduced and read to the jury, we affirm the trial court's ruling allowing those depositions into evidence.

Appellant contends in its final point that the trial court erred in awarding a judgment for $34,979.20 to the appellee when the jury found that appellee's total damages were only $25,000.00. Again, we find the appellant's argument to be without merit.

In her policy with the appellant, appellee paid a premium and had coverage for both uninsured motorist damages in the amount of $25,000.00 per person and medical payments to the extent of $10,000.00 per person. Appellee's medical payment provision stated that an insured shall not recover duplicate benefits for the same elements of loss under this or any similar insurance. After finding that the uninsured motorist's negligence was the proximate cause of the accident, the jury, in interrogatory number two, set the amount of appellee's damages, resulting from the occurrence, at $25,000.00. In a third interrogatory, the jury was asked whether the appellee incurred reasonable medical expenses for bodily injuries within twenty-four months of the

occurrence. In answering that question in the affirmative, the jury found in a fourth interrogatory that the amount of medical expenses was $9,979.20. The jury had been instructed by the trial judge to treat each interrogatory as a separate verdict.

In reviewing the jury's finding to each interrogatory, we cannot say that the jury granted recovery for the same elements of loss or that the *total* damages that could be awarded was $25,000.00. Specifically, neither the interrogatories submitted (without objection) to the jury, nor the jury's answers to those interrogatories, reflect that the medical expenses were in any way included in or a part of the $25,000.00 amount awarded under appellee's uninsured motorist coverage. Consistent with the terms of the interrogatories given the jury, the jury was justified in awarding damages of $25,000.00 plus medical expenses of $9,979.20, and was not, as suggested by the appellant, limited to the $25,000.00 amount set out in the uninsured motorist provision.

In the alternative, the appellant contends that the trial court should have allowed it to set off the damages due under the medical payment provisions by the amount paid under the uninsured motorist coverage. This court has held that an insurance company is prohibited from setting off one payment under its policy against another one under the same policy. *State Farm Mut. Auto. Ins. Co.* v. *Sims*, 288 Ark. 541, 708 S.W.2d 72 (1986). We have recognized that the right of reimbursement and credit is allowed pursuant to Ark. Code Ann. § 23-89-207 (1987) in a situation where there are payments from more than one source. *Id.* That is not the case here.

Because we find no merit in the appellant's points of error, we affirm.