BULL SHOALS COMMUNITY HOSPITAL *v.* Mark PARTEE

92-214                                                          832 S.W.2d 829

Supreme Court of Arkansas
Opinion delivered June 29, 1992

*Tatum Law Firm*, by: *Tom Tatum*, for appellant.

*Frank H. Bailey* and *H. David Blair*, for appellee.

DONALD L. CORBIN, Justice. Appellant, Bull Shoals Community Hospital urges us to reverse a jury verdict awarded to appellee Mark Partee in a medical malpractice action. Appellant argues that evidence of insurance was improperly admitted at trial, and for this reason the trial court erred in denying appellant's motion for a mistrial and a new trial. We disagree and affirm.

On October 31, 1988, Partee arrived at Bull Shoals Hospital complaining of abdominal pain and constipation. Dr. Louis DeInnocentes examined Partee, and performed exploratory surgery later that afternoon. Partee suffered complications as a result of the surgery and was not discharged from the hospital until November 9, 1988. Upon discharge, Partee was instructed to see Dr. DeInnocentes in four days.

On November 13, 1988, Partee went to Baxter County Hospital complaining of pain at the site of his incision. Partee was treated at Baxter County Hospital for a diverticular abscess and for complications resulting from the exploratory surgery performed at Bull Shoals Hospital. Partee spent five days in intensive care, and approximately one week in a private hospital room before being discharged as an outpatient on November 25, 1988.

At all times relevant to this action, Partee was a member of United Health Care Plan, a health maintenance organization (HMO) sponsored and promoted by Bull Shoals Hospital. In order to qualify for payment under the Plan, the HMO required its members to use the staff of Bull Shoals Hospital, except in emergency situations or cases for which Bull Shoals Hospital could not provide treatment.

Partee brought an action against appellant hospital seeking damages for medical malpractice and breach of contract. Partee alleged that Dr. DeInnocentes was the agent and employee of Bull Shoals Hospital, and that the hospital was liable under the doctrine of *respondeat superior* for the damages sustained as a result of Dr. DeInnocentes alleged malpractice. Partee further alleged that appellant hospital d/b/a United Health Care Plan breached the HMO contract by failing to pay $29,997.69 for

Partee's incurred medical expenses. Prior to trial, the trial court granted Partee's motion to sever the breach of contract claim from the medical malpractice claim.

During trial on the medical malpractice claim, one of the crucial disputed issues was whether Dr. DeInnocentes acted as the agent or employee of the appellant hospital. *See Medi-Stat, Inc.* v. *Kusturin*, 303 Ark. 45, 792 S.W.2d 869 (1990). Accordingly, the trial court allowed appellee to introduce evidence of the HMO contract for the limited purpose of proving that appellant hospital exercised control over Dr. DeInnocentes' treatment of patients covered by the HMO plan. Pursuant to this ruling, appellee introduced various HMO documents including his group enrollment card, group enrollment application, and group service agreement. After the introduction of each document, the trial court instructed the jury that the document should only be considered for the purpose of determining whether an agency relationship existed between the hospital and Dr. DeInnocentes.

Appellant does not specifically challenge the introduction of the HMO documents on appeal. Rather, appellant argues that a statement by appellee's wife elicited on cross-examination, entitled appellant to a mistrial because of the cumulative prejudicial effect of this statement and the previously admitted HMO documents. The following exchange occurred on cross-examination of appellee's wife:

> Q.     What was his temperature when he was taken to Baxter Regional?
>
> A.     About 102 to 103.
>
> Q.     But you didn't make any of those calls to Bull Shoals or Dr. DeInnocentes?
>
> A.     I didn't see why I should. . . . I was taking him to the emergency room.
>
> Q.     Did you not enter an agreement with the doctor that discharged him that you would do that?
>
> A.     Well, the way I understood the insurance, if it was an emergency, we could take him to the nearest emergency room, so that's what I did.

At that point, appellant moved for a mistrial on the grounds that Mrs. Partee's mention of "insurance," combined with the medical bills and HMO documents in evidence, prejudiced appellant by improperly injecting insurance evidence and the severed contractual claim regarding the nonpayment of the insurance claim.

The court conducted an in-chambers hearing where it denied appellant's motion for mistrial, stating that the issue of coverage had not been brought to the jury's attention. The court further noted that Mrs. Partee's statement was a response to probing by appellant's counsel, and the court offered to consider issuing a cautionary instruction at the close of the case if one was provided. Counsel for appellant then stated, "I will be requesting the cautionary instruction at the close of the case. . . . [O]therwise I waive my objection." At the close of the case, appellant failed to proffer a cautionary instruction.

We do not find an abuse of discretion in the trial court's refusal to grant a mistrial. First, it is hard to see how the mention of the word "insurance" prejudiced appellant. The reason insurance evidence is generally prohibited is to exclude evidence of a "deep pocket" from the jury. *Hacker* v. *Hall*, 296 Ark. 571, 759 S.W.2d 32 (1988). This concern was not implicated in the present case because the "insurance" to which appellee's wife referred was not the hospital's liability insurance but Partee's own health coverage under the HMO policy. In this context, no danger existed that the jury verdict would be influenced by evidence suggesting that a "deep pocket" would be responsible for any liability on the part of the hospital. Second, counsel for appellant explicitly stated that he waived his objection with the unfulfilled stipulation that he would later request a cautionary instruction. We do not consider on appeal objections specifically waived at trial. *See Powell* v. *Bishop*, 279 Ark. 365, 652 S.W.2d 9 (1983); *see also Nicholas* v. *State*, 268 Ark. 541, 595 S.W.2d 237 (Ark. App. 1980).

Appellant also argues that Mrs. Partee's response improperly injected the severed contractual claim regarding the nonpayment of Partee's hospital bills. Again, appellant specifically waived his objection at the in-chambers hearing on his mistrial motion. Furthermore, Mrs. Partee's statement did not

refer to the non-payment of medical bills, but to the guidelines of the HMO contract regarding emergency situations. The trial court correctly noted that appellant's counsel invited mention of the HMO guidelines by cross-examining Mrs. Partee as to why she did not take her husband back to Bull Shoals Hospital. One who opens up a line of questioning or is responsible for error cannot be heard to complain of that for which he was responsible. *Berry* v. *State*, 278 Ark. 578, 647 S.W.2d 453 (1983). In this case, appellant questioned Mrs. Partee as to why she did not return her husband to Bull Shoals Hospital for treatment, and Mrs. Partee's response indicated her belief that the HMO contract allowed for other facilities to provide care in emergency situations.

A mistrial is an extreme remedy to be taken only when it is apparent that justice cannot be served by continuing the trial. *Powell* v. *Burnett*, 304 Ark. 698, 805 S.W.2d 50 (1991). The trial judge has considerable discretion in deciding whether to grant a motion for mistrial, and we will not reverse in the absence of manifest abuse. *Dickerson Constr. Co.* v. *Dozier*, 266 Ark. 345, 584 S.W.2d 46 (1979). In this case, we find no manifest abuse of discretion.

Appellant's second argument for reversal is that the trial court erred in denying its motion for new trial. Appellant incorporates the arguments regarding the denial of the mistrial motion, and also asserts entitlement to a new trial based on the testimony of Abija Hughes, administrator of the appellant hospital. On direct examination by appellee's counsel, Hughes testified as to the hospital's obligations under the HMO plan. Hughes' testimony included an admission that the policy required the hospital to provide or arrange for hospital services. Hughes further testified that the HMO plan covered hospital stays regardless of the length of the stay.

While appellant argues that the testimony prejudiced the jury by improperly injecting the contractual claim, we agree with appellee that Hughes' testimony was necessary to show the extent of the hospital's control of the treatment of HMO patients. The line of questioning pursued by appellee's attorney illustrated the hospital's economic incentive to discharge such patients, and this economic incentive, coupled with the HMO obligation to

provide care, was relevant to prove the extent of the hospital's control over the doctors' determinations as to when the HMO patients should be discharged. *See Medi-Stat, supra.* As the agency issue was in dispute, we discern no abuse of discretion in the denial of the motion for new trial.

Affirmed.