Kenneth BENSON and Louann Benson *v.*
SHULER DRILLING COMPANY, Inc.

93-822                                        871 S.W.2d 552

Supreme Court of Arkansas
Opinion delivered February 28, 1994
[Supplemental Opinion on Denial of Rehearing
April 18, 1994.]

*Robert L. Depper, Jr.* and *Denver L. Thornton,* for appellants.

*Bridge, Young, Matthews & Drake, PLC,* by: *Stephen A. Matthews* and *Ruth Ann Wisener,* for appellee.

JACK HOLT, JR., Chief Justice. This lawsuit arose when a saltwater tank owned by Shuler Drilling Company ("Shuler"), which was being serviced by Mr. Kenneth Benson, an employee of Arkansas Service Company, exploded, injuring him. Mr. Benson and his wife sued Shuler claiming that the explosion was the

result of Shuler's negligence. A crucial factual question at trial was whether Mr. Benson was on the catwalk on the side of the tank or on the ground near the tank when the explosion occurred. The jury found in favor of Shuler. We reverse and remand.

*I. Admission of physician's discharge summary*
*A. A.R.E. Rule 803 (4) — Medical Records Exception*
*to Hearsay Rule*

For their first allegation of error, the Bensons contend that the trial judge erred in refusing to grant their motion in limine as to certain sections of Dr. Callaway's deposition relating to his medical records. Dr. Callaway was Mr. Benson's orthopedic surgeon whose deposition was admitted into evidence in lieu of his live testimony.

Of primary concern is Dr. Callaway's written discharge summary, which provides in pertinent part: "The patient is a 22 year old white male in an oil tank explosion, fell from the cat walk around the oil tank down to the ground."

When asked who had informed him that Mr. Benson had fallen from the catwalk, Dr. Callaway spoke in contradictory terms: "I assume that it came out in the subsequent, when he was able to talk about it, or someone told us. . . .I would not know where else I would have gotten it except from Mr. Benson, unless a relative or somebody — I'm sure that once he was able to discuss it, we discussed the mechanism of injury, and that may be where that came from, but at this point, I don't have any documentation to tell me how I got that information." On the other hand he stated: "When opposing counsel asked me about the catwalk fall and that thing, I said I just assumed that Mr. Benson told me that, but I can't state that with any degree of certainty. I don't know where we got it, but I didn't pick it out of the air someplace. Somebody told me, or I got the information from some place."

In addition, it is unclear from the record when Dr. Callaway was informed that Mr. Benson had fallen from the catwalk. The written history, taken in the emergency room, reflects that Dr. Callaway was not informed at the time of Mr. Benson's admission that he had allegedly fallen from a catwalk: "The patient is a 21 year old white male involved in an oil field explosion in which he sustained injuries to both arms and both lower extrem-

ities. *Exact mechanism of injury is not known.*" (Emphasis added.) In his deposition, Dr. Callaway explained that he had taken a history from him "as best he could at that time with his injuries and all."

Dr. Callaway acknowledged that it is helpful for him to learn of the cause of a patient's injuries immediately and stated:

> In the extent in this case or in many cases, it was in the emergency room, that the nature of the injury and the mechanism of injury is sometimes important in assessing the severity of the injury. A high velocity crush injury is going to be much more severe even though the x-rays and appearances may be very similar to a low velocity injury in the emergency room.

Yet, Dr. Callaway did not indicate that he had relied upon the information that Mr. Benson had fallen from the catwalk in making his diagnosis or prescribing treatment. Judging from the doctor's testimony and his case history report, it is readily apparent that Dr. Callaway did not have this information upon Mr. Benson's admission nor did he utilize it in making his diagnosis and prescribing treatment.

Because of Dr. Callaway's uncertainty as to who made the statements or when they were made, Mr. Benson filed a motion in limine prior to trial, seeking to exclude portions of testimony contained in Dr. Callaway's deposition, namely matters relating to Mr. Benson's cause of injury. The trial court examined his testimony on a line-by-line basis, excluding certain portions but admitting the information relating to his discharge summary which attributed his injury to a fall from the catwalk. We have stated that motions in limine are to enlighten the court and advise counsel of the specific nature of the anticipated evidence so that the court may intelligently act on such motions. *Smith* v. *Walt Bennett Ford, Inc.*, 314 Ark. 591, 864 S.W.2d 817 (1993); *Schichtl* v. *Slack*, 293 Ark. 281, 737 S.W.2d 628 (1987). Motions in limine are not ordinarily used to extinguish an entire claim or defense. Rather, they are usually used to prohibit the mentioning of some specific matter, such as an inflammatory piece of evidence, until the admissibility of that matter has been determined out of the hearing of the jury. *Schichtl, supra*, (citing *Lewis* v. *Buena Vista*

*Mutual Ins. Ass'n*, 183 N.W.2d 198 (Iowa 1971)).

It follows, then, that one who offers evidence has the burden of showing its admissibility. *See Arkansas State Highway Comm.* v. *Roberts*, 246 Ark. 1216, 441 S.W.2d 808 (1969). When a party asks for a motion in limine to exclude evidence because it is hearsay, the burden is on the "offering party to prove the admissibility of the evidence." See Robin L. Lafferty, Comment, *Motion in Limine*, 29 Ark. L. Rev. 215, 226 (1975)(citing *Aetna Casualty and Surety Co.* v. *Finney*, 346 S.W.2d 917 (Tex.Civ.App. 1961)). This burden was not met in this case.

Since the introduction of evidence is a matter within the sound discretion of the trial judge, we must determine whether or not he abused his discretion in allowing the discharge summary in evidence before we reverse his findings, and in the absence of abuse of that discretion, we will not reverse. *See Jackson* v. *State*, 290 Ark. 375, 720 S.W.2d 282 (1986). *See Robinson* v. *State*, 314 Ark. 243, 861 S.W.2d 548 (1993); *Gipson* v. *Garrison*, 308 Ark. 344, 824 S.W.2d 829 (1992).

In support of their argument that the trial court abused its discretion and committed error in admitting the discharge summary, the Bensons cite A.R.E. Rule 803 (4):

Hearsay exceptions — Availability of declarant immaterial.

(4) Statements for purposes of medical diagnosis or treatment. Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain or sensation or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

The Bensons contend that because Dr. Callaway could not say with any certainty when or from whom he had acquired the information that Mr. Benson had fallen from the catwalk and because he could not have relied upon this information "for purposes of medical diagnosis and treatment," Shuler has not met its burden of proof.

Granted, where an injured party has described how his injury occurred, the basis for this hearsay exception is his strong

motivation to be truthful in giving statements for diagnosis and treatment. *Carton* v. *Missouri. Pac. R.R.*, 303 Ark. 568, 798 S.W.2d 674 (1990). Moreover, it has been suggested that, under these circumstances, a fact reliable enough to serve as the basis for diagnosis is also reliable enough to escape hearsay proscription. *United States* v. *Iron Shell*, 633 F.2d 77 (8th Cir. 1980). Thus, the trustworthiness of statements made to a physician and offered at trial under the exception may be tested by determining whether the information provided is of a type reasonably relied upon by a physician in diagnosis and treatment, and by determining whether the patient's motive is consistent with this rule's purpose. *Id.* However, when, as here, the declarant is unknown, the reliability of the statement is highly suspect.

Although we have not addressed this precise issue before, the Eighth Circuit Court of Appeals faced a similar situation in *Stull* v. *Fuqua Industries, Inc.*, 906 F.2d 1271 (8th Cir. 1990). In *Stull*, there was a factual dispute as to how the seventeen-year-old appellee hurt himself on a riding lawnmower — the question was whether he jumped off the mower or got his foot trapped in the mower. The Eighth Circuit affirmed the trial judge's decision to exclude a hospital record that stated that the accident occurred when Stull jumped off the lawn mower, explaining:

> The medical records exception to the hearsay rule assumes that a person making a statement for the purpose of obtaining medical diagnosis or treatment will likely tell the truth to a medical person and that the statement is therefore inherently reliable. Hence, to fall within the exception, the statement must be obtained from the person seeking treatment, or in some instances from someone with a special relationship to the person seeking treatment, such as a parent.

> Here the word "apparently" in the hospital record indicates that the statement about jumping off the mower may not have been made by Stull; it may instead represent conjecture on the part of the person filling out the record. Fuqua introduced no evidence rebutting this possibility. In fact, Dr Wolf, the treating physician, testified that he did not know from whom the statement was obtained. In the absence

of any evidence attributing the statement to Stull, the district court acted well within its discretion in excluding the hospital record.

*Stull*, 906 F.2d at 1273-1274.

Although not binding, the holding of the Eighth Circuit Court of Appeals is persuasive and in applying its rationale to the case at bar, we see that the trial court abused its discretion in admitting Dr. Callaway's statements from the discharge summary into evidence, for Dr. Callaway could not remember whether or not he obtained this statement from Mr. Benson while he was seeking treatment or from someone who was in a special relationship with him. In short, he could not remember who told him about Mr. Benson falling from a catwalk.

Furthermore, the record is devoid of any indication that Dr. Callaway relied on the information he received that Mr. Benson fell from the catwalk to fashion his diagnosis of Mr. Benson or his treatment. Construing the federal equivalent to A.R.E. Rule 803(4), Professor Weinstein explains that in order to be admissible, these statements need to be for the purposes of diagnosis or treatment:

> Statements relating to someone else's symptoms, pains or sensations would be admissible, provided again, they were made for purposes of diagnosis or treatment. The relationship between the declarant and patient will usually determine admissibility . . . As the relationship becomes less close, the statement becomes less reliable, both because the motive to tell the truth becomes less strong, and because even a stranger in good faith may not be able to describe another's physical pain and suffering as infallibly as an intimate. The court in its discretion pursuant to Rule 403 will have to assess the probative worth of the statement, which will depend on its significance, its contents, by whom it is made, and in what circumstances it was made, and decide whether admission is warranted despite the dangers of prejudice, confusion and waste of time.

*Weinstein's Evidence*, Vol. 4 (1993), p. 803-145.

In the absence of any evidence attributing the state-

ment to Mr. Benson or to someone in a special relationship with him, or that Dr. Callaway relied on this statement to fashion his diagnosis or treatment of Mr. Benson, we hold that the trial court abused its discretion in admitting the hospital record into evidence.

### B.  A.R.E. Rule 803(6) — Business Records Exception to Hearsay Rule

Shuler also claims that the discharge summary was admissible under the business records exception contained in A.R.E. Rule 803 (6), which provides:

> Records of regularly conducted business activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method of circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

We interpreted the business records exception as having seven requirements: (1) a record or other compilation, (2) of acts or events, (3) made at or near the time the act or event occurred, (4) by a person with knowledge, or from information transmitted by a person with knowledge, (5) kept in the course of regularly conducted business, (6) which has a regular practice of recording such information, (7) all as known by the testimony of the custodian or other qualified witness. *Terry* v. *State*, 309 Ark. 64, 67, 826 S.W.2d 817, 819 (1992). Rule 803 (6) further provides that business records will be not be admitted if the source of information or the method of circumstances of preparation indicate lack of trustworthiness. *Id.*

Applying these seven requirements to the discharge summary, we hold that it was not admissible under this excep-

tion because the source of information indicates lack of trustworthiness and the record was not made by a person with knowledge of the testimony. Nor was the record made at or near the time the event occurred.

### C. Waiver of testimony by "opening the door"

Lastly, Shuler claims that the Bensons "opened the door" on this testimony in Dr. Callaway's deposition and, therefore, have waived their right to complain about it. Yet, as the Bensons point out in their brief, the parties stipulated prior to the taking of the deposition that "[t]he right to object to the testimony of the witness on the grounds of incompetency, irrelevancy and immateriality is expressly reserved. . . ." Our rules of civil procedure permit parties to stipulate to preserve any objections as to the taking of the deposition until the time of trial. *See* Ark. R. Civ. P. 29; Carlton Bailey, *"Usual Stipulations" are Usually a Mistake at the Oral Deposition*, 1991 Ark. L. Notes 3. In addition, Ark. R. Civ. P. 32(b) provides that an objection may be made at the trial or hearing to receiving into evidence any deposition or part thereof for any reason which would require the exclusion of the evidence if the witness was then present and testifying. *Shelter Mut. Ins. Co.* v. *Tucker*, 295 Ark. 260, 748 S.W.2d 136 (1988). As such, even though the Bensons first explored the medical history in a limited manner during the taking of Dr. Callaway's deposition, they have a well-established right to make objections and to try to excise portions of his testimony at trial.

### II. Bracketed material in AMI 301

Although we reverse and remand this case based on the introduction of the discharge summary, we address the Bensons' argument regarding AMI 301 as it will, in all probability, be an issue facing the trial court in the event of retrial.

The Bensons contend that the trial court committed reversible error by giving the bracketed portion of AMI 301. The jury instruction given provides:

> When I use the word "negligence" in these instructions, I mean the failure to do something which a reasonably careful person would do, or the doing of something which a rea-

sonably careful person would not do, under circumstances similar to those shown by the evidence in this case. [To constitute negligence an act must be one from which a reasonably careful person would foresee such an appreciable risk of harm to others as to cause him not to do the act, or to do it in a more careful manner.]

The Bensons claim that by giving the bracketed material, the court "eroded and lessened the 'reasonable care' standard." We disagree, for as Shuler emphasizes, Arkansas law recognizes that the failure to guard against an occurrence that is not reasonable to anticipate is not negligence.

Foreseeability is a necessary ingredient of actionable negligence in this state. *Dollins* v. *Hartford Accident & Indemnity Co.*, 252 Ark. 13, 477 S.W.2d 179 (1972); *North Little Rock Transp. Co.* v. *Finkbeiner*, 243 Ark. 596, 420 S.W.2d 874 (1967). There is no negligence in not guarding against a danger which there is no reason to anticipate. *First Electric Cooperative Corp.* v. *Pinson*, 277 Ark. 424, 642 S.W.2d 301 (1982). There is a duty on the part of one in charge of a dangerous instrumentality to protect against danger if he knew or should have known that the situation was dangerous. *Id.*

In the situation before us, the evidence was disputed as to whether the saltwater tank resting on gravel would create static electricity and if so, whether this was the cause of the explosion. Evidence presented at trial also established that Shuler's saltwater tank was no different than those used by other companies in similar situations. Accordingly, foreseeability of the accident was in issue and the bracketed portion of AMI 301 was justified under the circumstances.

Since this case is being reversed and remanded, we need not address the Bensons' argument that the verdict for Shuler was not supported by substantial evidence.

Reversed and remanded.

DUDLEY and HAYS, JJ., dissent.

ROBERT H. DUDLEY, dissenting. The majority opinion reverses because "the trial court abused its discretion in admitting the hospital record into evidence." It is difficult to squarely join issue

with the majority opinion because the point of appeal is not about admitting a hospital record into evidence, but rather it is about the admissibility of questions and answers contained in the deposition of Dr. J.C. Callaway, plaintiff Kenneth Benson's orthopedic surgeon.

The parties agreed to take the evidentiary deposition of Dr. Callaway because he would be unavailable to testify on the scheduled trial date. The deposition was to constitute a part of plaintiffs' case-in-chief, and, at trial, it was read into evidence for that purpose. In taking the deposition, plaintiffs' counsel asked about plaintiff Kenneth Benson's condition when he was initially brought into the emergency room of the hospital. After a few questions, and without objection from the defendant, plaintiffs' counsel asked, "Did you take a history from him at that time?" Dr. Callaway responded, "As best I could with his injuries and all." On cross-examination, after the plaintiffs' attorney had opened the door, the defendant's attorney asked additional questions about that history. Subsequently, plaintiffs' attorney filed a motion objecting to the questions and answers about the medical history. *See* ARCP Rule 32(b). The motion identified by page and line the questions and answers to which plaintiffs objected. The trial court carefully considered each objection and separately ruled on the admissibility of each. Some objections were sustained, while others were overruled. In this point of appeal, the Bensons contend the trial court erred in overruling some of the objections and allowing the jury to hear the answers.

We have often set out the standard of review for a case of this kind: A trial court has discretion in admitting evidence, and, on appeal, we will reverse a trial court's ruling on the admissibility of evidence only in the case of abuse of that discretion. *Warhurst* v. *White*, 310 Ark. 546, 838 S.W.2d 350 (1992). That standard should be applied in this case.

The facts surrounding the trial court's ruling are as follows. After the deposition had been transcribed, plaintiffs filed their initial motion to exclude the questions and answers as follows: "Plaintiffs would move to exclude the following testimony of Dr. J.C. Callaway for the reasons of hearsay; page 20, line 17; page 20, lines 21-24; page 21, lines 2-8; page 6, lines 9-25; page 15, lines 5-8; page 25, lines 13-19." In the motion, plaintiffs did not

cite a rule of evidence, nor did they cite a single case to the trial court. The abstract does not reflect that plaintiffs filed a brief in support of the motion. The complete objection was contained in the motion, and that was the sole word "hearsay."

Later, plaintiffs amended their motion as follows: "The Plaintiffs would additionally designate the following testimony of Dr. J.C. Callaway to be excluded: page 21, lines 9-25; page 22, lines 1-3." Again, neither a rule of evidence nor a case was cited in the motion, nor was a supporting brief filed. The parties did not make an oral argument to the court, so the plaintiff did not supply any additional citations.

The abstract does not reflect that the trial court ever ruled on the motion to exclude the specific questions and answers, and, consequently, we might affirm solely on that basis. *Linnell* v. *State*, 283 Ark. 162, 671 S.W.2d 741 (1984). Even so, I would not do so. Rather, I would go to the record, examine the rulings, reach the merits, and affirm the rulings of the trial court because the trial court did not abuse its discretion.

While plaintiffs' abstract does not reflect that they filed a brief in support of their motion, the record reflects that they did do so. The record discloses that they filed a brief and objected to the admission of the questions and answers on the ground that Dr. Callaway was not certain who gave him the medical history. No other ground for exclusion was ever argued to the trial court. In response to that one argument, the trial court ruled:

> These motions dealt with the testimony of Dr. J.C. Callaway, who will be presented to the jury by deposition. Specifically, those exceptions dealt with Dr. Callaway's testimony on pages 6 of the deposition, page 15 of the deposition, page 20 of the deposition, page 21 of the deposition, page 22 of the deposition, and page 25 of the deposition.
>
> The Court from the motions did some preliminary research and caused rulings to be presented and made. Basically, the Court relied on the Arkansas Rules of Evidence, Rule 803(4), which deals with diagnosis or medical information taken by the medical care provider and Rule 803(6) which deals with recorded statements and business records.

The Court feels that any evidence, either admitted or excluded, would have to be, particularly with regard to Dr. Callaway's statements, reasonably relied on and reasonably pertinent to the diagnosis or treatment.

There are several authorities for that and the court founded it's rulings on *Huls* v. *State*, 27 Ark. App. 242. Although a criminal case dealt with these statement or statements and I think in that case it was the statement of a victim concerning the defendant throwing something at her and busting her tooth. The court felt that was not necessary because whether it was thrown at her or whatever the situation was, it wasn't necessary for the purpose of diagnosis or treatment.

The second was *United States Iron and Steel*, 636 Fed. 2d, 177, an 8th Circuit case [*United States* v. *Iron Shell*, 633 F.2d 77 (8th Cir. 1980)]. It gave the test of this which hopefully the Court is using.

The Court then reviewed the depositions and on page 6, lines 9 through 25, granted the motion to exclude on the basis that it was not certain to the court or from the deposition who the declarant was, who the source of the statement was received from, that this statement made by Dr. Callaway would be at best speculative, not reliable and not trustworthy.

Secondly, on page 15 the testimony of Dr. Callaway dealt with social security. That is a collateral source and the Court feels that that should be excluded.

Finally, on pages 20, 21, 22, and 25, [the basis of this appeal] the Court felt that all of this or all of these statements by Dr. Callaway were elicited in the questioning of Dr. Callaway and basically he says that the source of these statements, he assumed were from Mr. Benson and he further stated "I would not know where else I got it."

I think that that was written down on his discharge summary or the statements relating thereto from the discharge summary do have reliability, do have trustworthiness and are admissible under 803(4) and 803(6) and specif-

ically, on page 20 there were lines 17 and lines 21 and 24; on page 21 line 8; on page 22 lines 1 through 3; and on page 25 lines 13 through 19. I think that those should not be excluded and should be admitted as testified to by Dr. Callaway.

The majority opinion takes direct issue with the trial court's finding of fact and implies that there was no evidence whatsoever that plaintiff Kenneth Benson gave the history. The majority opinion states: "In the *absence of any evidence* attributing the statement to Mr. Benson or someone in a special relationship with him, or that Dr. Callaway relied on this statement to fashion his diagnosis or treatment of Mr. Benson, we hold that the trial court abused its discretion in admitting the hospital record into evidence." That statement reflects the issue between the majority opinion and this dissent. The issue is whether the trial court abused its discretion in ruling that there was sufficient evidence to allow Dr. Callaway to testify about the medical history.

The majority opinion discusses other issues, and they can be quickly laid aside. We have often written that we will not consider arguments raised for the first time on appeal. *Babbitt* v. *Quick-Way Lube & Tire Inc.*, 313 Ark. 207, 853 S.W.2d 273 (1993). The majority opinion goes far beyond the one issue raised in the trial court. The majority opinion reverses in part because of a Rule 403 weighing of probative worth against the danger of prejudice. The notion that a 403 weighing should have been conducted is raised for the first time in the majority opinion. Plaintiffs did not ask for a 403 weighing, and the argument should not be considered for the first time on appeal. To do so is very unfair to appellee, for it has not been given the opportunity to make a record on the issue.

Additionally, the majority opinion holds, in part, that the defendant, as a matter of law, had the burden of showing the admissibility of the evidence and that it failed to meet that burden. The majority opinion cites a case decided before the adoption of the Uniform Rules of Evidence. *Arkansas State Highway Comm'n* v. *Roberts*, 246 Ark. 1216, 441 S.W.2d 808 (1969). Even though the Arkansas Rules of Evidence do not address the burden of proof, the statement is subject to question, because all

relevant evidence is now admissible unless excluded by a rule of evidence or by law. A.R.E. Rule 402. Under the Rules it would seem that the opponent of evidence must invoke some rule of evidence that excludes the evidence, and, if it is applicable, then the proponent must make the evidence satisfy the rule. Regardless of the correct rule about the burden of proof, the argument should not be considered, because, like the others, it is raised for the first time on appeal. This part of the holding in the majority opinion should also be laid aside.

There is only the one issue before this court. The record of evidence on that issue is just as the trial court found: On direct examination, plaintiffs' counsel asked about plaintiff Kenneth Benson's condition when he was brought to the hospital. A few questions later plaintiffs' counsel asked Dr. Callaway the following:

Q   Did you take a history from him at this time?

A   As best I could with his injuries and all.

Later, on cross-examination, defendant's counsel asked, and the doctor answered:

Q   Yes. You spoke earlier of history, the history that you have, I believe you said, such as you were able to obtain or something like that. Is history important to you in treating a patient?

A   In the extent in this case or in many cases, it was in the emergency room, that the nature of the injury and the mechanism of injury is sometimes important in assessing the severity of the injury. A high velocity crush injury is going to be much more severe even though the x-rays and appearances may be very similar to a low velocity injury in the emergency room.

Q   So you try from whatever source you can to get the best information you can about what caused the injury, is that correct?

A   At this time, of course, there wasn't much—

Q   I'm not taking about this particular case.

A   Yes, we try to ascertain how much the patient was injured and particularly the mechanism of injury and whether it was a high velocity or low velocity type injury.

Q   In your discharge summary, which you dictated October the 7th, 1984, you wrote, quote, "The patient is a 22 year old white male in an oil tank explosion." I think maybe the word "injured" is left out, ". . .in an oil tank explosion, fell from the catwalk around the oil tank down to the ground sustaining a fracture of the left femur, a comminuted fracture of the lateral femoral condyle on the left and posterior dislocation of the right hip," unquote. Do you know who told you that he fell from a catwalk?

A   I assume that is came out in the subsequent, when he was able to talk about it, or someone told us but —

Q   You wrote this on October 7th, after the accident on September 24th, and that was the time he was discharged from the hospital. Do you assume that Mr. Benson gave you this information?

A   I would not know where else I would have gotten it, unless a relative or somebody — I'm sure that once he was able to discuss it, we discussed the mechanism of injury and that may be where that came from, but at this point, I don't have any documentation to tell me how I got that information.

Q   But you did write on October 7th, 1984, that "he fell from the catwalk around the oil tank down to the ground," is that correct?

A   If that is what it says, it is correct as far as I know.

Q   Well, would you like at your—

A   I read it just a few minutes ago.

The trial court read the foregoing questions and answers, examined them in light of the sole objection regarding uncertainty about who gave the information, and ruled "basically he says that the source of these statements, he assumed were from Mr. Benson and he further stated 'I would not know where else I got them.'" The trial judge thought the doctor's testimony about the

history was certain enough to allow the evidence to be admitted, and the weight to be given the evidence would be left up to the jury. It is inconceivable that the majority opinion says the ruling constituted an abuse of discretion, and, in addition, the ruling has a basic fairness about it. On direct examination, plaintiffs' counsel asked whether Dr. Callaway had taken a history from Kenneth Benson, and, after finding that he had done so, questioned him on the subject. On cross-examination, defendant's counsel asked about the details of the history. Plaintiffs objected to the detailed information. The trial court read the deposition and recognized that the jury would hear plaintiffs' question about taking a history and the answer that the doctor had taken a history from the plaintiff Kenneth Benson, but would never hear the details of that history. It was obvious that plaintiffs wanted the jury to know that the doctor had taken a history, but they did not want the jury to know what it was. In comparable cases we have said that one who opens up a line of questioning should not be heard to complain of that for which he was responsible. *Bull Shoals Community Hosp.* v. *Partee*, 310 Ark. 98, 832 S.W.2d 829 (1992). That is only fair.

In summary, the trial court had discretion in allowing the relevant testimony into evidence, and the trial court did not abuse its discretion in allowing the testimony. Accordingly, I dissent from the majority opinion.

HAYS, J., joins in this dissent.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING
APRIL 18, 1994

*Robert L. Depper, Jr.*, for appellants.

*Bridges, Young, Matthews & Drake, P.L.C.*, by: Stephen A. Matthews, for appellee.

JACK HOLT, JR., Chief Justice. In its petition for rehearing, the appellee Shuler Drilling Company, Inc.'s (Shuler) sole point of contention is that this court erred in holding that the Bensons "did not open the door" to the testimony from Dr. Callaway regarding the medical records. In this regard, we noted that "as the Bensons point out in their brief, the parties stipulated prior to the taking of the deposition that '[t]he right to object to the testimony of the witness on the grounds of incompetency, irrelevancy and immateriality is expressly reserved . . .'" Shuler claims that since the stipulation does not appear in the record, this holding was based on assumed facts not in the record. This is partially correct.

Dr. Callaway's deposition was read into the record at trial. Thus, it appears in the transcript, but without the stipulations in question. Examination of the files and record in this case reflect that although Bensons' exhibits one through six and Shuler's exhibit one are in the packet, and the exhibit sheet prepared by the court reporter lists the deposition as being included, the deposition, Bensons' exhibit seven, is no where to be found. In the Bensons' brief, they cite us to page two of the deposition for the stipulations; however, this citation is of no moment since the deposition is not available. Thus we stand in error as to the stipulation.

Regardless, Shuler's argument does not justify granting its petition for rehearing because we spelled out in our opinion another basis for our holding in Bensons' favor. Ark. R. Civ. P. 32(b) provides that an objection may be made at the trial or hearing to receiving into evidence any deposition or part thereof for any reason which would require the exclusion of the evidence if the witness was then present and testifying. Since Shuler's

counsel complied with Rule 32(b), our mistaken assertion as to a stipulation between the parties is of no consequence.

Affirmed.