# United States Court of Appeals

### For the Eighth Circuit

_____

No. 16-3684

_____

Apex Oil Company, Inc.,

*Plaintiff - Appellant,*

v.

Jones Stephens Corp.,

*Defendant - Appellee.*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: September 20, 2017
Filed: February 5, 2018

_____

Before COLLOTON, BENTON, and KELLY, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Apex Oil Company appeals a grant of summary judgment dismissing several products liability claims that it brought against Jones Stephens Corporation. We

agree with the district court[1] that there was insufficient evidence to support any of the theories that Apex advances on appeal, and we therefore affirm.

## I.

Jones Stephens sold a PlumBest plumbing supply line to a builder or plumbing contractor, and it was installed in 2004 or 2005 at a building owned by Apex Oil Company in Humphrey, Arkansas. The supply line, which was connected to a toilet on the second floor of the building, consisted of a stainless steel braided hose with a plastic coupling nut on the end. A label affixed to the supply line included the following statement: "Leak proof seal—High quality outer braid of stainless steel and exclusive crimp on fittings for maximum performance."

According to Apex's evidence, on or about January 16, 2013, someone discovered a stream of water coming from the second floor bathroom of Apex's building. The water caused damage to the building and to property inside. An investigation into the cause of the escaping water determined that a plastic coupling nut on the supply line failed after it fractured at the intersection of the base of the nut and the threaded walls. An expert witness retained by Apex averred that the plastic coupling nut was improperly manufactured because the plastic contained voids. The expert also opined that "the fact that voids could be formed during the manufacturing of plastic coupling nuts was well known in the industry prior to 2004."

Apex sued Jones Stephens in the district court, alleging state-law claims based on strict liability, failure to warn, breach of implied warranty of merchantability, negligence, reckless negligence, deceptive trade practices, and warranty violations.

---

[1]The Honorable Kristine G. Baker, United States District Judge for the Eastern District of Arkansas.

The district court granted Jones Stephens's motion for summary judgment and dismissed the complaint.

## II.

Apex appeals the district court's dismissal of four claims: strict liability, negligence, negligent failure to warn, and deceptive trade practices. As a federal court with jurisdiction based on diversity of citizenship, we apply the substantive law of Arkansas to this dispute, and we review the judgment *de novo*. *See S & A Farms, Inc. v. Farms.com, Inc.*, 678 F.3d 949, 954 (8th Cir. 2012). Summary judgment is warranted where there is no genuine issue of material fact for trial and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

## A.

Apex argues that Jones Stephens is strictly liable because the "toilet supply line was unreasonably dangerous beyond the extent which would be contemplated by the ordinary and reasonable user." Under Arkansas law, a supplier is strictly liable for damages if:

> (1) The supplier is engaged in the business of manufacturing, assembling, selling, leasing, or otherwise distributing the product; (2) The product was supplied by him or her in a defective condition that rendered it unreasonably dangerous; and (3) The defective condition was a proximate cause of the harm to a person or to property.

Ark. Code Ann. § 16-116-101(a). The second element requires proof that the product was both "defective" and "unreasonably dangerous." *Purina Mills, Inc. v. Askins*, 875 S.W.2d 843, 847 (Ark. 1994).

An "unreasonably dangerous" product is one that "is dangerous to an extent beyond that which would be contemplated by the ordinary and reasonable buyer, consumer, or user who acquires or uses the product." Ark. Code Ann. § 16-116-202(7)(A). This definition assumes "the ordinary knowledge of the community or of similar buyers, users, or consumers as to [the product's] characteristics, propensities, risks, dangers, and proper and improper uses." *Id.* The knowledge also includes "any special knowledge, training, or experience possessed by the particular buyer, user, or consumer or which he or she was required to possess." *Id.* Apex does not have any special knowledge, training, or experience in the use of plumbing supply lines, so the question here is whether the supply line was dangerous "beyond that which would be contemplated by the ordinary and reasonable buyer, consumer, or user."

Arkansas law recognizes that a consumer with ordinary knowledge would contemplate that a product may be less effective than the supplier represents. Two leading cases are *Berkeley Pump Co. v. Reed-Joseph Land Co.*, 653 S.W.2d 128 (Ark. 1983), and *Purina Mills* from 1994. In *Berkeley Pump*, the court concluded that an agricultural corporation would contemplate the possibility that irrigation pumps installed in its fields "might fail to produce an optimum volume of water on a sustained basis." 653 S.W.2d at 133. The court thus rejected a strict liability claim against the manufacturer of the irrigation pumping equipment for damage to water-deprived crops, because an ordinary and reasonable consumer would contemplate the potential shortcomings of the pumps. *Id.* Similarly, in *Purina Mills*, the court ruled insufficient a strict liability claim brought by dairy farmers against an animal feed manufacturer based on deficient vitamin content in the feed. 875 S.W.2d at 845. The court reasoned that while a supply of "toxic" feed would be unreasonably dangerous, the "possibility that manufactured feed for livestock might not contain the nutritional constituents recited on its labels, or that such levels might be affected by time, weather, or methods of storage, would hardly be beyond the contemplation of the ordinary buyer." *Id.* at 847.

-4-

Applying Arkansas law to this dispute, we conclude that Apex failed to present sufficient evidence that the danger of water escaping from the toilet supply line was beyond the contemplation of an ordinary and reasonable consumer. Even where a manufacturer purports to deliver a "leak proof seal," an ordinary and reasonable consumer would anticipate the risk that water might escape at some point from a home plumbing system that relies on plastic connections, especially after the product has aged several years. Typical consumers are aware that they must monitor their plumbing systems for water leakage. Supplying a plastic coupling nut that later fractures is more analogous to distributing pumping equipment that underperforms or to selling animal feed that manifests deficient vitamin content than to supplying toxic animal feed. Apex does not identify authority under Arkansas law that the sort of product failure at issue here should be deemed beyond the contemplation of an ordinary consumer. We therefore conclude that Apex did not present sufficient evidence that Jones Stephens's product was unreasonably dangerous, and the district court properly dismissed the strict liability claim.

B.

Apex next argues that Jones Stephens was negligent on two theories: general negligence and failure to warn. Apex says Jones Stephens should have known that "voids could be formed during the manufacturing process of plastic coupling nuts," and should have warned Apex of "the potential dangers of the toilet supply line failure." Negligence means the failure to do something that a reasonably careful person would do to guard against a foreseeable danger. *Wallace v. Broyles*, 961 S.W.2d 712, 715 (Ark. 1998); *Benson v. Shuler Drilling Co.*, 871 S.W.2d 552, 558 (Ark.), *as supplemented on denial of reh'g* (Apr. 18, 1994). In Arkansas, a manufacturer or seller generally has a duty to warn an ultimate user of the risks of its product. *West v. Searle & Co.*, 806 S.W.2d 608, 613 (Ark. 1991). To prevail on a negligence theory, however, Apex must show that Jones Stephens knew or should have known of a danger posed by the toilet supply line.

-5-

In light of Apex's evidence about "common knowledge" in the industry, we may assume that Apex presented sufficient evidence to show that Jones Stephens should have known before 2004 that voids could be formed during the manufacturing process of plastic coupling nuts. Even so, Apex also must present sufficient evidence to support a finding that Jones Stephens should have foreseen that those voids would lead to a failure of the plastic coupling nut and an escape of water from the toilet supply line. Apex did not present evidence about Jones Stephens's knowledge before 2004 that there was a link between voids and structural failure of plastic parts. None of the materials relied upon by Apex's expert speaks to that question in the relevant time frame. Without evidence establishing a causal connection between voids created by the manufacturing process and a structural failure of the parts, a jury would be left to speculate about that element of the negligence causes of action. Accordingly, the district court properly dismissed Apex's claims alleging negligence and negligent failure to warn.

## C.

Apex also challenges the dismissal of its claim that Jones Stephens acted deceptively and unconscionably by advertising a "Leak proof seal" on the label of the plastic coupling nut. The Arkansas Deceptive Trade Practices Act prohibits "[e]ngaging in any . . . unconscionable, false, or deceptive act or practice in business, commerce, or trade." Ark. Code Ann. § 4-88-107(a)(10). The statute in effect at the time of the alleged wrongful conduct by Jones Stephens provided a cause of action for "[a]ny person who suffers actual damage or injury as a result of an offense or violation." Ark. Code Ann. § 4-88-113(f) (2011). The parties dispute whether a claim under the statute requires proof that the plaintiff relied on an alleged deceptive act by the defendant.

The Arkansas courts have not addressed whether reliance is required under this statute, *see Philip Morris Cos. v. Miner*, 462 S.W.3d 313, 320 (Ark. 2015), but we

think the better view is that reliance is an element of the claim. A plaintiff must prove that it suffered damage "as a result of" a violation of the Act; in other words, the defendant's deceptive trade practice must have caused the damage. Causation, in turn, is not possible without reliance. As we said in a case arising under Minnesota law, "as a practical matter it is not possible that the damages could be caused by a violation without reliance on the statements or conduct alleged to violate the statutes." *In re St. Jude Med., Inc.*, 522 F.3d 836, 839 (8th Cir. 2008) (quoting *Grp. Health Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2, 13 (Minn. 2001)). Apex could have suffered damage "as a result of" the "[l]eak proof" statement on the label only if Apex read the label and took some action because of the label. But Apex did not present evidence that it knew about the label before the incident or that it relied on the label in taking some action (such as declining to monitor the supply line) that caused the water damage. There was thus insufficient evidence that Apex's water damage was "a result of" the alleged deceptive trade practice.

Apex contends that a recent amendment to the statute shows that reliance was not an element of the cause of action under the provision that applies to Apex's claim in this case. As amended in 2017, the statute provides a cause of action for "[a] person who suffers an actual financial loss as a result of *his or her reliance* on the use of a practice declared unlawful" by the Act. Ark. Code Ann. § 4-88-113(f)(1)(A) (2017) (emphasis added). Apex argues that the legislature's change shows that reliance was not an element under the former version. We are not convinced. For the reasons discussed, the more natural reading of the former text required proof of reliance, even though that term was not expressly included in the statute. The amendment is better viewed as a clarification. The district court properly dismissed Apex's claim under the Act.

* * *

The judgment of the district court is affirmed.

_____

-7-