SLIP OPINION  Cite as 2015 Ark. App. 373

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV–14–1067

|  |  |
|---|---|
| | **OPINION DELIVERED** JUNE 17, 2015 |
| MOHAMMAD ASHRAF LONE<br>APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SIXTH DIVISION<br>[NO. 60CV-2013-3552] |
| V. | |
| | HONORABLE TIMOTHY DAVIS FOX, JUDGE |
| RICK KOCH d/b/a RICK KOCH OIL COMPANY<br>APPELLEE | AFFIRMED ON DIRECT APPEAL; REVERSED AND REMANDED ON CROSS-APPEAL |

## ROBERT J. GLADWIN, Chief Judge

Appellant Mohammad Ashraf Lone appeals the August 15, 2014 order entered by the Pulaski County Circuit Court. He argues that the circuit court erred when it denied his motion to set aside the judgment previously entered in favor of appellee Rick Koch d/b/a Rick Koch Oil Company (collectively "Koch"). Koch cross-appeals, arguing that the circuit court erred when it stayed all execution of the judgment until he appeared in person to show cause why he should not be held in contempt for failing to appear for his deposition. We affirm on direct appeal and reverse and remand on cross-appeal.

*Facts*

Mohammad Lone and Lone's Jacksonville, Inc. (collectively "Lone"), and Koch entered into a "Retailer Product Sales Agreement" (the "RPSA") dated November 1, 2011.

Under the RPSA, Koch paid Lone for the rights to supply fuel to two convenience-store locations as follows: $200,000 for a location in Wichita, Kansas, and $50,000 for a location in Johnson, Arkansas.

Under the RPSA, Lone was contractually obligated to provide Koch the rights to provide fuel to two stores. After executing the RPSA and accepting the $200,000, Lone was unable to open the Wichita store and was in default of the RPSA. On April 2, 2012, six months after the RPSA had been executed, Koch emailed Lone demanding the return of its $200,000 and advising that failure to do so would result in legal action. Lone did not return the $200,000 to Koch.

On April 26, 2012, Koch filed a lawsuit in Oklahoma district court alleging a single claim for breach of the RPSA and seeking to recover the $250,000 that had been advanced for the right to supply fuel to the two convenience-store locations, plus additional consequential damages. Lone was served with the lawsuit on May 29, 2012. After the lawsuit had been filed, Lone met with Koch and they negotiated in an attempt to settle the lawsuit by modifying the RPSA to substitute a different store location for the Wichita store. Based on his understanding of their agreement, Lone did not file an answer or otherwise appear in the lawsuit.

The modification agreement was drafted and sent to Lone via email by Koch's employee, Tom Howell, on June 29, 2012. Lone returned an executed copy of the modification agreement by email on July 3, 2012. The modification agreement provided that the RPSA was modified to substitute a store located in Frontenac, Kansas, for the Wichita

store that appeared in the original RPSA. Pursuant to the terms of the modified RPSA, Koch supplied fuel to both the Frontenac store and the Johnson store after Lone signed the modification agreement. However, Koch claims that he never executed the modification agreement and never told Lone that the Oklahoma lawsuit had been dismissed or otherwise resolved.

Koch did not dismiss the lawsuit, and on January 4, 2013, without notice to Lone, Koch obtained a default judgment against Lone in the amount of $268,000 (the "judgment"). At the time the judgment was entered, Koch was supplying fuel to both the Frontenac store and the Johnson store under the terms of the modified RPSA. Koch filed the Oklahoma judgment, and it was registered in Arkansas with the Pulaski County Circuit Court on September 6, 2013, and an order confirming registration of foreign judgment was entered on October 4, 2013.

On May 5, 2014, Lone filed a motion to set aside the judgment and to stay execution based on fraud, misrepresentation, and misconduct of Koch in obtaining the judgment. An amended motion was filed on July 1, 2014, and a hearing was held on the motion on July 16, 2014. Koch did not appear at the hearing. Lone testified at the hearing, and the circuit court received twenty-three exhibits, including emails from Koch and his agents concerning the modified RPSA substituting the Frontenac store for the Wichita store.

Koch's counsel deferred cross-examination of Lone, and Lone rested. After Lone rested, Koch's counsel moved to dismiss the motion to set aside the judgment. The circuit court granted the motion to dismiss and denied Lone's motion to set aside the judgment,

3

determining that Lone had failed to prove fraud in the procurement of the judgment by clear and convincing evidence. In its ruling, the circuit court also stayed all execution of the judgment until such time as Koch appeared in person to show cause why he should not be held in contempt for failure to attend a scheduled deposition. The circuit court's ruling was memorialized by an order entered on August 15, 2014. Lone filed a timely notice of appeal on September 15, 2014.[1] Koch filed a timely notice of cross-appeal on September 23, 2014.

*Standard of Review*

An order denying a motion to set aside a default judgment is an appealable order, *see Marcinkowski v. Affirmative Risk Mgmt. Corp.*, 322 Ark. 580, 910 S.W.2d 679 (1995), which this court reviews for an abuse of discretion. *Nationwide Ins. Enter. v. Ibanez*, 368 Ark. 432, 246 S.W.3d 883 (2007). The abuse-of-discretion standard is "a high threshold that does not simply require error in the circuit court's decision, but requires that the circuit court act improvidently, thoughtlessly, or without due consideration." *Gulley v. State*, 2012 Ark. 368, at 10, 423 S.W.3d 569, 576.

I. *Denial of Lone's Motion to Set Aside the Judgment*

Koch registered the judgment under the Uniform Enforcement of Foreign Judgments Act, codified at Arkansas Code Annotated sections 16-66-601 to -608 (Repl. 2005) (the "Act"). Once registered under the Act, the judgment became, in effect, an Arkansas judgment. *See Nationwide*, 368 Ark. at 436, 246 S.W.3d at 886. A foreign judgment registered

---

[1]September 14, 2014, fell on a Sunday.

SLIP OPINION

in Arkansas is subject to being set aside through a motion brought pursuant to Arkansas Rule

of Civil Procedure 55(c) (2014). *Id.* at 437, 246 S.W.3d at 887. Rule 55(c) provides:

> Setting Aside Default Judgments. The court may, upon motion, set aside a default judgment previously entered for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) the judgment is void; (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; or (4) any other reason justifying relief from the operation of the judgment. The party seeking to have the judgment set aside must demonstrate a meritorious defense to the action; however, if the judgment is void, no other defense to the action need be shown.

Fraud, whether actual or constructive, warrants the setting aside of a judgment.

*Dickson v. Fletcher*, 361 Ark. 244, 206 S.W.3d 229 (2005) (decision under Ark. R. Civ. P. 60).

Constructive fraud "may exist in the complete absence of dishonesty of purpose, evil intent

or moral guilt." *Battles v. Morehead*, 103 Ark. App. 283, 287, 288 S.W.3d 693, 697 (2008)

(citations omitted). Lone cites *West v. West*, 103 Ark. App. 269, 288 S.W.3d 680 (2008), as

a factual situation analogous to the facts of this case, and contends that he presented

substantial, uncontroverted evidence of fraud, both actual and constructive, in addition to

circumstances constituting misconduct by Koch.

Koch does not dispute that a foreign default judgment may be set aside pursuant to

Rule 55(c), or that, once registered, the default judgment becomes, in effect, an Arkansas

judgment. But in order to set aside the default judgment due to fraud in the procurement,

Lone had to establish certain necessary elements of fraud by clear, strong, and satisfactory

proof, as detailed in the next section, and we hold that Lone failed to do so.

Lone submits that he presented "clear and convincing undisputed evidence" that the

judgment was procured by fraud, misrepresentation, or other misconduct by Koch. Lone

5

urges that his testimony was uncontroverted, that his credibility was not called into question by cross-examination or otherwise, and that he introduced documentary evidence, including emails authored by Koch and his agents establishing the existence of the settlement agreement and the modification of the RPSA.

When he learned of the lawsuit filed on April 26, 2012, Lone arranged and attended a meeting with Koch. As a result of that meeting, Lone believed that he and Koch had reached an agreement to settle the dispute by substituting the Frontenac store for the Wichita store. Discussion of this proposed agreement was set out in a May 23, 2012 email sent to Lone from Howell that stated in part:

> Enclosed is a spreadsheet showing what we would be willing to consider as replacement gallons for the Wichita store. . . . *So in review: We would sign a contract on Frontenac and Sunset Corner and assume Marty's anams and fix the Veedor Root at Johnson so we can monitor it according to the contract for the $250,000.00 we have already gave [sic] you and the unams [sic] at Johnson and the Sapphire Upgrades and we would release the Wichita store.*
>
> . . . .
>
> In the event that you feel that we are not able to come to a resolution or you are unwilling to move forward *we would take back the $200,000.00 for Wichita and then our only demand would be fixing the Veedor Root.*

(Emphasis added.) Howell's email acknowledged that in no event would Koch be entitled to the return of the $50,000 paid for the Johnson store, which he was supplying with fuel as agreed pursuant to the terms of the RPSA.

On June 29, 2012, Howell sent Lone another email attaching "the proposed RPSA and Contract modification to transfer from Wichita to Frontenac." The email included three other attachments: a Mutual Agreement for Transfer of Contracts; a Retailer Product Sales

Agreement for two convenience stores in Ft. Scott, Kansas (the "Ft. Scott Contract");[2] and a Contract Modification Agreement (the "Modification Agreement") memorializing the terms of the negotiated modifications to be made to the RPSA.

The Modification Agreement states that it is to modify the RPSA between the parties, and provides in part:

> Buyer and Seller Agree to Exchange 3810 Woodlawn Wichita Kansas known as location #1 of the RPSA for 5005 Parkview Drive Frontenac Kansas as spelled out in the special provisions section 33-1. This document releases any obligation for 3810 Woodlawn Wichita Kansas for Buyer or Seller and transfers the obligation to 5005 Parkview Drive Frontenac Kansas. Buyer has 30 days to complete the transfer.

Lone signed the Modification Agreement, and it was returned to Koch. Koch did not return a fully executed copy of the Modification Agreement to Lone and claims that he never signed it, but it is undisputed that the parties proceeded with performance of the RPSA as modified by the Modification Agreement.

Specifically, Koch supplied fuel to both the Johnson store and the Frontenac store after the Modification Agreement was signed by Lone. Howell sent Lone an email on September 24, 2012, in which he acknowledged the exchange of the Frontenac store for the Wichita store:

> The operator in Frontenac Kansas is asking why his markup is .02 over posted rack. He was buying from Marty for a different mark up. *We exchanged this for Wichita* and the markup was .02 over post rack.

---

[2]The Ft. Scott Contract was related to a separate transaction between the parties unrelated to the RPSA or the agreed-upon modified RPSA.

(Emphasis added.) Lone also introduced credit-card advice reports evidencing that Koch, through his company, ASAP Energy, Inc., was supplying fuel to the Frontenac store after the Modification Agreement had been signed by Lone. Lone argues that the evidence was clear and convincing that the RPSA, which was the basis for Koch's petition for breach of contract, was modified after the lawsuit had been filed and that the parties performed under the terms of the modified RPSA.

A hearing was held in the Oklahoma lawsuit on November 5, 2012, but Lone asserts he had no knowledge of the hearing.[3] The November 5, 2012 entry to the docket, which was admitted into evidence, states, "CASE CONTINUED TO PRE-TRIAL, JANUARY 11, 2013, AT 9:30 A.M. FOR DEFAULT JUDGMENT." As of November 5, 2012, Koch was supplying fuel to both the Frontenac and Johnson stores under the terms of the modified RPSA. Although Koch sent Lone an email on November 19, 2012, about the Johnson store, he never told Lone about the hearing or mentioned that the lawsuit was still pending. It is undisputed that Lone never filed an answer or otherwise appeared in the Oklahoma district-court lawsuit.

On December 21, 2012, Howell sent an email to Lone, with a copy to Koch, concerning an alleged breach of the Ft. Scott Contract. The Ft. Scott Contract involved the payment of $160,000 for ten-year fuel-supply agreements on the two stores located in Ft. Scott, Kansas. During this time, Koch and Howell were upset about issues that had arisen

---

[3]Lone introduced a certified copy of the record from the Oklahoma court as Exhibit 1.

with getting the Ft. Scott stores open under that separate contract. However, Koch never filed a lawsuit against Lone for breach of the Ft. Scott Contract. The only reference in Howell's December 21, 2012 email pertaining to the stores covered by the RPSA was to insurance for the Frontenac store. No one notified Lone that the lawsuit was still pending, that a hearing was set for January 4, 2013, or that a hearing was set for January 11, 2013.

Again, with Lone having no knowledge or notice, after failing to file an answer, a hearing was held on January 4, 2013, at which time Koch obtained the judgment against Lone for $268,000. The judgment states that "[e]ach and every allegation contained in the Plaintiff's Petition is taken as true and confessed against the Defendant." Those allegations were that Lone had breached the RPSA by failing to complete the release of the Wichita and Johnson stores. We note that, as evidenced by the docket, no amended petition was filed in the Oklahoma lawsuit informing the court that the RPSA had been modified subsequent to the filing of the lawsuit to substitute the Frontenac store for the Wichita store, or that Koch was, as of January 4, 2013, supplying fuel to both locations pursuant to the modified RPSA.

On June 27, 2013, Koch sent Lone an email in which he stated:

> I have a judgment against you for 268,000.00 *because I loaned you money to open the Wichita, Kansas store and you failed to get it open* plus I loaned you 160,000.00 and paid several bills so you could open 2 Ft Scott, Kansas stores that are not open. I need to know when you plan to pay me the money you owe for not having these stores open. I need to hear from you on Monday 7–1–2013.

(Emphasis added.) At the time of this email, Koch was still supplying fuel to both the Frontenac and Johnson stores. This fact was acknowledged by Koch in a subsequent email

he sent on July 8, 2013, to the broker who had brought Lone and Koch together, where he stated:

> Please help me get the Ft. Scott situation resolved. I have been treated very bad [sic] in every business deal so far that you and Mohammed have brought to me. I paid what I was told to pay and so far every deal is bad. *The Arkansas store and Frontenac both underperform* and both Ft. Scott sites are closed. I feel I have no choice but to turn this situation over to my Attorney as soon as possible. Please contact me before 7-15-2013.

(Emphasis added.) Lone asserts that this undisputed evidence was clear and convincing that there was fraud, misrepresentation, and misconduct by Koch in the procurement of the judgment.

We disagree and hold that the circuit court did not abuse its discretion in finding that Lone failed to prove the necessary elements of fraud in the procurement of the default judgment by clear and convincing evidence. In order to set aside the default judgment due to fraud in the procurement of same, Lone had to establish the following necessary elements of fraud by clear, strong, and satisfactory proof: (1) a false representation of a material fact; (2) knowledge that the representation is false or that there is insufficient evidence upon which to make the representation; (3) intent to induce action or inaction in reliance upon the representation; (4) justifiable reliance upon the representation; and (5) damage suffered as a result of the reliance.[4] *West*, 103 Ark. App. at 272, 288 S.W.3d at 683.

---

[4]Lone asserts both constructive and actual fraud. Constructive fraud is premised on representations that are made by one who, not knowing whether they are true or not, asserts them to be true. *Beatty v. Haggard*, 87 Ark. App. 75, 184 S.W.3d 479 (2004). Even in cases of constructive fraud, a material misrepresentation of fact must be made. Here, there is no evidence that Koch made any representation to Lone that he would dismiss the lawsuit upon execution of the Modification Agreement or that, even after Lone executed the Modification

Lone failed to identify a false representation of a material fact. Absent from the June 29, 2012 email sent from Howell to Lone—the one that Lone offers as evidence of an "agreement" between the parties—is any reference to the pending Oklahoma lawsuit. The email speaks in conditional terms: "what we would be *willing to consider*." (Emphasis added.) None of the documents or testimony revealed that Koch ever told Lone that he would dismiss the lawsuit in exchange for an agreement to substitute the Wichita store for the Frontenac store. The circuit court specifically found that Koch never told Lone that the Oklahoma litigation had gone away or that the matter had been resolved. Lone seems to imply that he had the right to assume that if Koch did not tell him that the lawsuit had been dismissed; it had been, but, a party cannot invoke the aid of the court in setting aside a judgment where he failed to keep himself informed. *See Diebold v. Myers Gen. Agency*, 292 Ark. 456, 731 S.W.2d 183 (1987). The circuit court correctly concluded, after due consideration, that Lone had not established this necessary element of fraud.

Lone complains that Koch failed to disclose something to him—specifically, that the lawsuit had not been dismissed or was not resolved. But we note that Lone and Koch were not in any confidential relationship; to the contrary, they were on opposite sides of an adversarial lawsuit. In order to prove that Koch's silence constituted fraud, Lone was obligated to demonstrate that Koch concealed a material fact and that Koch had a duty to disclose that fact. *Ward v. Worthen Bank & Trust Co., N.A.*, 284 Ark. 355, 681 S.W.2d 365 (1984). We hold that the circuit court did not err in finding that Lone failed to prove either.

Agreement, the lawsuit had been dismissed or resolved.

Additionally, the record is devoid of any allegation that Koch ever asked Lone not to file an answer or otherwise respond to the Oklahoma complaint. Lone could have filed an answer or other response in the Oklahoma litigation, which would have preserved his rights, and at the same time still have been able to negotiate a potential settlement with Koch. Accordingly, we hold that there was no error in finding that Lone failed to prove that Koch had any intent to induce action or inaction in reliance upon any alleged representation.

Finally, there is no merit in Lone's argument that he justifiably relied on any alleged promises of settlement. The lawsuit was filed on April 26, 2012, and served on Lone and the related entity on May 8, and May 3, 2012, respectively. An answer was due, at the latest, on or before May 29, 2012. Lone did not execute the modification or transfer agreement until July 3, 2012, well after he was already in default. The default judgment was not entered in Oklahoma until January 4, 2013. It cannot be said that Lone justifiably relied on any promises of settlement when he never received a fully executed Modification Agreement from Koch, never received notice of a dismissal or other pleading resolving the Oklahoma case, and never received any communication from Koch indicating that the lawsuit had been resolved.[5]

Lone also argues that the fraud that forms the basis of his motion to set aside the default judgment under Rule 55(c) also provides a meritorious defense to the Oklahoma lawsuit. Lone asserts that, had he not been deceived by a false promise of compromise, he

---

[5]To the extent that this court would consider the unsigned Modification Agreement and related contracts in reversing the trial court, Lone should have abstracted Koch's objections to same. Koch declined to submit a supplemental abstract in accordance with Ark. Sup. Ct. R. 4–2(b)(1) (2014).

would have asserted the Modification Agreement as his meritorious defense at trial. We reiterate that Lone did not execute the Modification Agreement until his deadline for filing an answer in the Oklahoma litigation had passed by more than a month. Accordingly, what Lone deems his meritorious defense, such as it is, did not exist until he was already in default. The circuit court correctly concluded that Lone failed to prove the necessary elements of fraud in the procurement of the judgment by clear and convincing evidence and, thus, properly denied the motion to set aside the default judgment.

II. *Cross-Appeal Regarding Stay of Execution of Judgment*

Koch filed a cross-appeal of the circuit court's order based on paragraph two of the order in which the circuit court stayed any execution of the judgment until Koch appeared in person in court to show cause why he should not be held in contempt for failing to appear at his deposition.

On May 6, 2014, Lone served a notice of deposition upon Koch to depose him on May 22, 2014, and, in response, Koch filed a motion to quash deposition notice. Lone filed his response to the motion to quash deposition notice on May 15, 2014, and on May 21, 2014, the circuit court denied the motion. Koch subsequently sought reconsideration of the circuit court's order denying his motion and, thereafter, for a protective order, which were also denied. Counsel for Koch objected to the circuit court staying execution until Koch appeared to show cause why he should not be held in contempt on the grounds that there had been no motion to compel, no motion for contempt, or any other due-process proceedings.

Criminal contempt preserves the power of the court, vindicates its dignity, and punishes those who disobey its orders, while civil contempt protects the rights of private parties by compelling compliance with orders of the court made for the benefit of private parties. *Omni Holding & Dev. Corp. v. 3D.S.A., Inc.*, 356 Ark. 440, 156 S.W.3d 228 (2004). Here, the possible contempt contemplated by the circuit court for failure to attend the deposition is that of civil contempt. In order to establish contempt, there must be willful disobedience of a valid order of a court. *See Ivy v. Keith*, 351 Ark. 269, 92 S.W.3d 671 (2002). Before one can be held in contempt for violating the court's order, the order must be definite in its terms, clear as to what duties it imposes, and express in its commands. *Id.*

Arkansas courts have held that a court may initiate contempt proceedings on its own motion, and a court may recite the offending matters in an order and direct a citation thereon to show cause. *Clark v. State*, 287 Ark. 221, 224, 697 S.W.2d 895, 896 (1985). But where the court initiates its own motion for contempt or motion to show cause, there is a prior order that has, at least allegedly, been disobeyed or violated. Here, there was no such order. The circuit judge ruled from the bench that, while he was not holding Koch in contempt at that time, prior to levying any execution regarding the judgment, Koch would have to appear in person and be prepared to defend a contempt issue. The record is devoid of any indication that Lone had sought to compel Koch's attendance at any deposition or filed any motion for contempt. There was no order, definite or otherwise, from which Koch could even potentially be found in contempt for willfully disobeying. Accordingly, we hold that the circuit court erred in prematurely staying all execution of the judgment until such time

14

as Koch appeared to show cause why he should not be held in contempt for the willful disobedience of a "nonexistent order."

At the time of trial, a writ of execution had been served on Lone, and his vehicle had been picked up by the Pulaski County Sheriff. Lone was allowed to retrieve his vehicle from the sheriff without payment to Koch and without putting up any bond. Arkansas Code Annotated section 16-66-301 and its accompanying statutes contain the exclusive means of staying or vacating writs of execution, and all other means are excluded. *See Looney v. Raby*, 100 Ark. App. 326, 268 S.W.3d 345 (2007). The statute requires a petition verified by affidavit, setting forth good cause why the execution ought to be stayed. While Lone's motion and amended motion to set aside the default judgment and for stay of execution both included an affidavit of Lone, neither the motions nor the affidavits include any reference to the execution or Koch's failure to attend any deposition. Furthermore, Lone was not required to put up any bond or other security whatsoever as contemplated by section 16-66-301(b)(1). Because there has been no order violated, much less a finding that Koch was in contempt of any such order, we hold that the circuit court erred in staying the execution of the judgment. Accordingly, we reverse and remand for further proceedings.

Affirmed on direct appeal; reversed and remanded on cross-appeal.

VIRDEN and HIXSON, JJ., agree.

*Lax, Vaughan, Fortson, Rowe & Threet, P.A.*, by: *Grant E. Fortson*, for appellants.

*Nixon & Light*, by: *J.R. Buzbee* and *John B. Buzbee*, for appellees.