Cite as 2021 Ark. App. 128

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV-20-7

| | |
|---|---|
| MIGUEL ESCOBAR<br><br>APPELLANT<br><br>V.<br><br>A&A ORCHARD, LLC<br><br>APPELLEE | **Opinion Delivered** March 17, 2021<br><br>APPEAL FROM THE CARROLL COUNTY CIRCUIT COURT, EASTERN DISTRICT<br>[NO. 08ECV-18-141]<br><br>HONORABLE SCOTT JACKSON, JUDGE<br><br>AFFIRMED IN PART; REVERSED AND REMANDED IN PART |

## STEPHANIE POTTER BARRETT, Judge

Miguel Escobar appeals the judgment entered in his negligence action against his employer, A&A Orchard, LLC. Escobar argues that the circuit court erred in (1) denying his motion for new trial, (2) failing to properly instruct the jury, and (3) reducing the judgment by the amount paid by A&A Orchard's insurance carrier for Escobar's medical expenses. We affirm in part and reverse and remand in part.

In June 2018, Escobar filed a complaint against A&A Orchard alleging that it had committed negligence when it required him to climb a "wobbly ladder in windy weather." Escobar fell from the ladder and alleged damages including partial amputation of a finger, medical bills, lost wages, and pain and suffering. The case was ultimately decided by a jury, which found A&A Orchard 51 percent at fault and Escobar 49 percent at fault. The jury awarded Escobar $17,976.12 in damages and, by separate interrogatory, specifically found

$14,976.12 of those damages constituted the reasonable expense of medical care, treatment, and services. Because medical-care expenses had already been paid by A&A Orchard's insurance carrier, the circuit court set aside that portion of the judgment. Escobar was therefore awarded $1,530, which is 51 percent of the remaining $3,000 award.

Escobar has appealed the judgment and the denial of his motion for new trial. He argues that the jury's verdict was clearly contrary to the preponderance of the evidence. Specific facts related to the arguments on appeal will be discussed below.

I. *Motion for New Trial*

At trial, the circuit court instructed the jury that if it decided for Escobar on the question of liability, it must then fix the amount of money

> which will reasonably and fairly compensate him for any of the following four [sic] elements of damage . . . which you find were proximately caused by the negligence of A&A Orchard.
>
> First: The nature, extent, and duration of any injury and whether it is temporary or permanent.
>
> Second: The reasonable expense of any necessary medical care, treatment, and services received, including transportation expenses necessarily incurred in securing such care, treatment, or services.
>
> Third: Any pain and suffering and mental anguish experienced in the past and reasonably certain to be experienced in the future.
>
> Four: The value of any lost—any earnings lost.
>
> And five: Any scars, disfigurement, and visible results of his injury.

The circuit court also explained that the jury must answer five interrogatories: One, whether it found negligence on the part of A&A Orchard; two, whether it found negligence on the part of Escobar; three, if yes to numbers one or two, then the apportionment of fault

2

between the parties using 100 percent as the total amount of fault; four, if less than 50 percent of fault is apportioned to Escobar, then the amount of damages sustained by Escobar; five, of the damages fixed in number four, what amount of those damages constitute the reasonable expense of any necessary medical care, treatment, and services.

During deliberations, the jury sent a note asking, "Can we do just lost wages and medical expenses? If so, how do we put that down on the paper?" The circuit court responded by again explaining the instructions on answering the interrogatories. The jury later returned a verdict as explained above.

In his motion for new trial, Escobar argued that, despite the uncontested nature of his damages—including a painful injury and visible disfigurement by partial loss of his pinky finger—the jury's note evinced its intent to disregard three of the five elements of damages and award damages only for medical expenses and lost wages. Escobar urged that the jury had failed to consider all the elements of his damages.

A&A Orchard countered that Escobar had presented no medical testimony or other medical evidence, apart from medical bills, to establish the damages sought; that Escobar's treating physician testified during A&A Orchard's case-in-chief that Escobar was in no acute distress, that his pain was well controlled, that he had no complications, and that he did not return for any follow-up visits; and Escobar offered no evidence to rebut the treating physician's testimony. A&A Orchard also stressed the jury's finding that Escobar was 49 percent at fault. In denying the motion for new trial, the circuit court found that "the jury was properly instructed as to all the elements of damage" and that the jury had not "improperly disregarded any one of these elements."

3

When the primary issue is the alleged inadequacy of the damages award, we will affirm the denial of a motion for a new trial absent a clear and manifest abuse of discretion. *Fritz v. Baptist Mem'l Health Care Corp.*, 92 Ark. App. 181, 211 S.W.3d 593 (2005). An important consideration is whether a fair-minded jury could have reasonably fixed the award at the challenged amount. *Depew v. Jackson*, 330 Ark. 733, 957 S.W.2d 177 (1997).

On appeal, Escobar contends that no fair-minded jury could reasonably find that the loss of part of a finger resulted in no pain, disability, or disfigurement, nor could the circuit court have reasonably or fairly concluded that the jury took into account all of his damages. Escobar cites *Tirado v. O'Hara*, 70 Ark. App. 152, 15 S.W.3d 715 (2000), in support of his argument. In *Tirado*, the circuit court granted a motion for new trial in a medical-malpractice action after the jury awarded damages only for a patient's actual monetary losses even though the record left no doubt that the patient's femoral nerve had been damaged, that the injury manifested itself in the form of pain in his leg, and that the injury was most likely to some degree permanent. This court held that the circuit court could fairly conclude that the jury failed to consider all the elements of the patient's damages and did not abuse its discretion in granting a new trial. Escobar contends that the evidence in his case is even stronger than in *Tirado* and that it was an abuse of discretion for the circuit court to find that the jury did not improperly disregard three of the elements of damage.

A&A Orchard responds that *Tirado* is distinguishable from this case. The patient in *Tirado* offered the testimony of seven physicians to describe his medical treatments and his damages, including pain suffered and permanency of the injury. Escobar presented no testimony from any physician on any point. No medical records concerning his treatment

4

and condition and prognosis were presented either. Only medical bills were introduced at trial. The only witnesses who testified in Escobar's case-in-chief were Escobar and the owner of A&A Orchard, John Aselage.

For its part, A&A Orchard likens this case to *Wallis v. Keller*, 2015 Ark. App. 343, 464 S.W.3d 128, in which this court affirmed the circuit court's denial of a motion for new trial. In *Wallis*, the plaintiff filed a complaint against the defendant driver after the driver rear-ended plaintiff's vehicle. The jury found for the plaintiff but returned a verdict of no damages. In holding that the jury could reasonably fix Wallis's damages at zero, this court noted,

> The testimony heard by the jury concerning Wallis's damages was anecdotal evidence from herself and her family. While such evidence is permitted and common in such proceedings, it does not establish a fact beyond a jury's determination. . . . The jury could have reasonably decided that the testimony from only family members was not reliable or persuasive as to the damages requested.

*Id.* at 7, 464 S.W.3d at 132. Finally, A&A Orchard notes that, other than the interrogatory that requested the jury to specify what amount of damages was for medical expenses, the verdict was a general verdict, and Escobar cannot conclusively claim that the jury awarded him $3000 only for lost wages.

Escobar insists that even if the jury did not believe his complaints of continued pain, no reasonable person could think that the injury itself was not painful or that he was not disfigured by the injury and that the jury could not reasonably conclude that he "was not injured at all."

We first note that Escobar's reliance on *Tirado* is not especially helpful as it involved the review of a circuit's grant of a motion for a new trial, whereas here, the circuit court

5

denied Escobar's motion for a new trial. *See Depew, supra* (cases reviewing the grant of a new trial offer little guidance when reviewing the denial of a motion for a new trial). We also note that this court reviews decisions on damages on a case-by-case basis with little reliance on prior decisions, as "precedents are of scant value in appeals of this kind." *Builder's Transp., Inc. v. Wilson*, 323 Ark. 327, 328, 914 S.W.2d 742, 743 (1996) (quoting *Matthews v. Rodgers*, 279 Ark. 328, 335, 651 S.W.2d 453, 457 (1983)).

The crux of Escobar's argument is that he suffered an injury that was indisputably painful when it occurred; therefore, the jury was required to award him some amount for pain and suffering. He contends the jury could not find "he was not injured at all," but that is not what the jury found. Instead, the jury concluded that $17,976.12, including $14,976.12 for reasonable medical expenses, adequately compensated Escobar for his damages. We hold that the jury could reasonably reach that conclusion and that the circuit court did not abuse its discretion in denying the motion for new trial.

II. *Jury Instruction*

Prior to trial, Escobar submitted proposed jury instructions, including several instructions regarding an employer's duty of care:

> It is an employer's duty to use ordinary care to furnish a reasonably safe place to work and reasonably safe appliances and use like care to keep them in a reasonably safe condition.
> Source: *Pekin Stave & Manufacturing Company v. Ramey*, 104 Ark. 1 (1912).

> It is the duty of an employer to exercise ordinary care to provide his employees with reasonably safe implements and instrumentalities with which to work, and also a reasonably safe place in which to perform their labor.
> Source: *Pekin Stave & Manufacturing Company v. Ramey,* 104 Ark. 1 (1912).

> It is the duty of an employer to furnish employees a reasonably safe place in which to work and reasonably safe appliances with which to work.

Source: *Berry Asphalt Company v. Kidd*, 200 Ark. 1121, 143 S.W.2d 42 (1940).

A&A Orchard proffered the model jury instruction that reads, "It was the duty of all persons involved in the occurrence to use ordinary care for their own safety and the safety of others." AMI Civ. 305. In a ruling made off the record, the circuit court decided to instruct the jury using a modified version of AMI Civ. 305. The jury was instructed on this matter as follows: "It is the duty of an employer to exercise ordinary care to provide his employees with a reasonably safe work environment. It is the duty of all employees involved in the occurrence to use ordinary care for their own safety and the safety of others."[1]

Escobar contends that the given instruction inadequately stated the law. He maintains that because an important component of his case was that his employer provided an unsafe ladder, the court should have given an instruction on A&A Orchard's specific duty to provide reasonably safe "appliances" to its employees or to maintain them in a reasonably safe manner.

In response, A&A Orchard argues that Escobar alleged a claim of negligence, and the jury was instructed properly on both an employer's and an employee's duty to use ordinary care. Because the duty applicable to Escobar's negligence claim was accurately stated in the

---

[1]Arkansas Model Jury Instruction–Civil 305 states in part, "A. It was the duty of (defendant), before and at the time of the occurrence, to use ordinary care for the safety of [(plaintiff)] [and] [(his)(her) property] [the property of (plaintiff)]. B. It was the duty of [all][both] persons involved in the occurrence to use ordinary care for their own safety and the safety of [others][and their property][the property of others]." The notes on use indicate that Paragraph A should be used when negligence on the part of the plaintiff is not an issue and that Paragraph B should be used when negligence on the part of the plaintiff is an issue. It appears that the circuit court decided to instruct the jury using Paragraphs A and B. No party has asserted as an error that parts A and B seem to have been part of the instruction.

7

modified version of AMI Civ. 305 given by the circuit court, "the instruction was given in accordance with Arkansas law and the directive to conform as closely to the AMI as possible." A&A Orchard also notes that a circuit court is not required to give an instruction just because it is an accurate statement of the law; nor is a court required to instruct in every possible manner. *Bruner v. State*, 2013 Ark. 68, 426 S.W.3d 386.

The cases hold that a party is entitled to a jury instruction when it is a correct statement of the law and there is some basis in the evidence to support giving the instruction. *Millsap v. Williams*, 2014 Ark. 469, 449 S.W.3d 291. Generally, AMI instructions should be used, and non–AMI instructions should be used only when AMI instructions cannot be used or modified. *Id.* But this court will not reverse a circuit court's refusal to give a proffered instruction unless there was an abuse of discretion. *Nelson v. Stubblefield*, 2009 Ark. 256, 308 S.W.3d 586. The abuse-of-discretion standard is "a high threshold that does not simply require error in the circuit court's decision, but requires that the circuit court act improvidently, thoughtlessly, or without due consideration." *Lone v. Koch*, 2015 Ark. App. 373, at 4, 467 S.W.3d 152, 155.

Here, the circuit court instructed the jury in accordance with two sections of AMI Civ. 305. Having considered the arguments and this case's context, we hold that the instruction as given adequately conveyed the concept of A&A Orchard's duty to use ordinary care in providing a reasonably safe environment for its employees. And because that modified instruction accurately stated the law, the circuit court did not abuse its discretion by declining Escobar's proffered instructions.

8

III. *Set-off*

In A&A Orchard's amended answer to Escobar's complaint, it explained that its insurance company, Southern Farm Bureau Casualty Insurance Company (Farm Bureau), had paid from its no-fault medical coverage $14,976.12 in medical bills and expenses incurred by Escobar, and it asserted that if Escobar was awarded a judgment for medical bills and expenses, it was entitled to a set-off in the amount of payments already made. A&A Orchard cited *Douglas v. Adams Trucking Co.*, 345 Ark. 203, 46 S.W.3d 512 (2001), as authority. In *Douglas*, the plaintiff was injured when he was struck by the defendant's truck. The defendant's liability carrier made a series of advance payments from its liability coverage to the plaintiff for medical expenses, loss of property, and loss of income. On appeal, the supreme court first held that, despite the defendant's failure to make an explicit agreement with the plaintiff that the advances would count toward future liability, the defendant was still entitled to a set-off. In determining the amount of the set-off, however, the supreme court applied set-offs only for those expenses that could be linked to specific coverages in the liability policy. Advance payments for out-of-pocket expenses from the liability carrier were not allowed due to the fact that the policy did not cover out-of-pocket expenses. The supreme court also reasoned that failure to grant such a set-off would result in double recovery and stated, "This court has often expressed its disapproval of double recoveries." *Id.* at 211, 46 S.W.3d at 517.

Escobar objected, asserting that A&A Orchard was attempting to "subrogate a claim made under its no-fault insurance coverage to a claim made under its liability insurance coverage." Escobar cited *Gause v. Shelter General Insurance Co.*, 81 Ark. App. 133, 98

9

S.W.3d 854 (2003), in support of his argument. Gause was a named insured under a policy issued by Shelter General Insurance Company and was injured in an automobile collision with an uninsured motorist. The policy provided limits of $25,000 in uninsured-motorist coverage and $5,000 in no-fault medical-pay coverage, for which separate premiums were paid. Gause sued Shelter in 2001 for uninsured-motorist benefits and amended her complaint to seek payment of medical expenses. In 2002, Shelter agreed to pay all medical expenses, which totaled $2,071.12. The case proceeded to a jury trial on the issue of uninsured-motorist coverage.

Prior to trial, Shelter moved to introduce evidence that it had paid Gause's medical expenses pursuant to the medical-payment provision of the policy. The circuit court granted Shelter's motion and permitted evidence of payment. On appeal, Gause argued that the circuit court erred in permitting Shelter to offset from its uninsured-motorist coverage the amount it had paid under its no-fault medical-expense coverage. This court agreed, stating:

> The outcome of this case is controlled by our supreme court's holding in *Shelter Mut. Ins. Co. v. Tucker*, 295 Ark. 260, 748 S.W.2d 136 (1988). In that case, the jury awarded the appellee $25,000.00 under her uninsured-motorist policy, plus $9979.70 in medical expenses under the medical-payment provision of the policy. One of the issues raised on appeal by the appellant insurance company was that it was entitled to a set-off for the award of medical expenses. The supreme court disagreed, and reasoned:
>
> > In the alternative, the appellant contends that the trial court should have allowed it to set off the damages due under the medical payment provisions by the amount paid under the uninsured motorist coverage. This court has held that an insurance company is prohibited from setting off one payment under its policy against another one under the same policy. *State Farm Mut. Auto. Ins. Co. v. Sims*, 288 Ark. 541, 708 S.W.2d 72 (1986). We have recognized that the right of reimbursement

10

> and credit is allowed pursuant to Ark. Code Ann. § 23–89–207 (1987) in a situation where there are payments from more than one source. *Id.* That is not the case here.
>
> In the present case, the trial court effectively gave Shelter a set-off for its medical payments, and this was erroneous because an insurance company cannot set off one payment under its policy for another one under the same policy.

*Gause*, 81 Ark. App. at 135–36, 98 S.W.3d at 855–56.

In this case, the circuit court heard arguments from counsel at a pretrial hearing but took the matter under advisement until the morning of the jury trial. The court later found that A&A Orchard was entitled to a set-off of any jury verdict for medical expenses because its insurance carrier had previously paid Escobar's medical bills.[2]

Escobar argues again on appeal that, under *Gause*, A&A Orchard was not entitled to a set-off and that the circuit court erred "when it allowed A&A Orchard[] to reduce the amount of the judgment by an amount paid by its insurance carrier under the no-fault provisions of its insurance policy." Escobar distinguishes *Douglas* by asserting that the payments made in that case were voluntary "advance" payments specifically for "particular elements of damage." Specifically, Escobar argues that Farm Bureau paid his medical bills because it was contractually obligated to do so under the medical-payments provision of its policy with A&A Orchard. Escobar contends that A&A Orchard has made no payment under the liability provision of its policy, and it should not be "allowed to reduce the judgment by amounts paid under an entirely separate policy provision."

---

[2]The circuit court announced its decision off the record prior to trial; however, the court reiterated its ruling on the record before instructing the jury.

11

A&A Orchard counters that because the medical expenses previously paid to Escobar were not from a collateral source, and the set-off prevented a double recovery, the circuit court was correct in allowing the set-off. A&A Orchard explains that, unlike *Gause*, this case does not involve an interpretation of an uninsured-motorist-coverage provision. Instead, A&A Orchard was awarded a posttrial set-off in the amount of medical payments made by its insurance carrier against the judgment awarded to Escobar for those same medical expenses. A&A Orchard asserts that "[a] set-off against a judgment for a specific award of damages already paid to the plaintiff was not at issue or considered by this Court in *Gause*." It contends, as it did below, that *Douglas* is controlling and supports the circuit court's decision in this case.

The parties also disagree on the standard of review we should apply in this appeal. Escobar contends that this is a contract-interpretation case with no facts in dispute, so our standard of review is de novo. A&A Orchard, on the other hand, urges us to treat the "bench hearing" that decided the set-off issue as akin to a bench trial and apply a clearly erroneous standard of review. We disagree that this is a contract-interpretation case but do agree with Escobar that whether the circuit court erred in allowing the set-off is a substantive question of damages law in the circumstances; and these questions receive a de novo review. *See Lloyd v. Pier W. Prop. Owners Ass'n*, 2015 Ark. App. 487, 470 S.W.3d 293 (questions of law reviewed de novo); *see also Segovia v. Romero*, 8 N.E.3d 581, 584–85 (Ill. App. Ct. 2014) ("We review *de novo* the question of whether a defendant is entitled to set off.").

Having reviewed the circuit court's decision de novo, we hold that it did err in allowing the set-off. An insurance policy typically contains several coverages including

liability coverage and other coverages. Here, the Farm Bureau policy contains several types of coverages—public bodily-injury liability, employer's bodily-injury liability to farm employees, property-damage liability, no-fault medical payment, death of livestock on public highway, and farm-products liability. With regard to the no-fault medical coverage, A&A Orchard paid an additional premium to raise the limits of the no-fault medical-payment coverage under the policy from $5000 to $15,000. The liability coverages protect the *insured*: the policy pays only when its insured is at fault. The no-fault medical coverage protects *the injured party*; it pays regardless of fault.

It is clear from the record that Farm Bureau paid the $14,976 in medical bills pursuant to the *no-fault medical coverage*:

Amended Answer . . .

17.     At the time of the incident in question, the defendant A & A Orchard, LLC, and its owner, John Aselage, had various insurance coverages though Southern Farm Bureau Casualty Company including *no-fault medical pay. Pursuant to that coverage*, Southern Farm Bureau Casualty Company paid $14,976.12 of medical bills and expenses incurred by the plaintiff as a result of the accident.

The prohibition to set off no-fault medical payments in uninsured-motorist cases was actually announced in two prior supreme court cases. "Its theory is still sound, however, in so far as it prohibits an insurance company from setting off one payment under its policy against another one under the same policy." *State Farm Mut. Auto. Ins. Co. v. Sims*, 288 Ark. 541, 545, 708 S.W.2d 72, 74 (1986). And in *Shelter Mutual Insurance Co. v. Tucker*, 295 Ark. 260, 269, 748 S.W.2d 136, 141 (1988), the supreme court held: "This court has held that an insurance company is prohibited from setting off one payment under its policy

13

against another one under the same policy. *State Farm Mut. Auto. Ins. Co. v. Sims*, 288 Ark. 541, 708 S.W.2d 72 (1986)."

There is one obvious distinction in this case vis-à-vis *Gause*, *Sims*, and *Tucker*. In *Gause*, *Sims*, and *Tucker*, the two competing coverages were *no-fault medical coverage* and *uninsured-motorist coverage*. Here, it is no-fault medical-payments coverage and liability coverage. However, the principle is the same: an insurance company cannot set off one payment under its policy for another one under the same policy.

In allowing a set-off of advance payments made against the liability coverage in *Douglas*, the supreme court held.

> [W]e are persuaded by the reasoning of one commentator for *American Law Reports, Third*, who has said that *advance payment arrangements* "have been designed to avoid criticisms which have been leveled at the liability insurance system on the ground that the injured party is normally in no financial position to await the outcome of a trial which might be long delayed and that therefore liability insurers are in a position to exert leverage in forcing a settlement more favorable than might otherwise be available because of the pressure of the injured party's financial necessities." W.E. Shipley, Annotation, *Effect of Advance Payment by Tortfeasor's Liability Insurer to Injured Claimant*, 25 A.L.R.3d 1091 (1969). Without question, the law favors the amicable settlement of controversies, and because of this, it is the duty of the courts to encourage parties to reach a compromise. *See Burke v. Downing Co.*, 198 Ark. 405, 129 S.W.2d 946 (1939). Because it appears to us that all of this is precisely what Columbia Insurance on behalf of Adams Trucking was attempting to do in this case, it should not be penalized for this practice. Moreover, should this court do otherwise, a double recovery could well be the result. This court has often expressed its disapproval of double recoveries. *See, e.g., Almond v. Cigna Prop. and Cas. Ins. Co.*, 322 Ark. 268, 908 S.W.2d 93 (1995). We hold that credit for some of the advances made to Douglas by Columbia Insurance should be allowed.

*Douglas*, 345 Ark. at 211, 46 S.W.3d at 517 (emphasis added).

In *Douglas*, the liability carrier made advance payments under its *liability coverage*. This is consistent with the rationale behind *Douglas* that amicable settlements should be encouraged and that insurance companies should not be discouraged from making advance

14

payments. In looking at the totality of the circumstances in *Douglas*, because the advance payments were made under the *liability coverage*, Adams Trucking and its insurance carrier were *not* attempting to set off payments made *under two separate coverages* as prohibited by *Gause*, *Sims*, and *Tucker*.

Here, A&A Orchard was not entitled to set off payments made to Escobar under the no-fault medical coverage of its insurance policy against the liability coverage in the same policy after the jury determined that A&A Orchard was 51 percent at fault for the incident in which Escobar lost part of his finger. We hold that the circuit court erred in allowing the set-off.

Affirmed in part; reversed and remanded in part.

ABRAMSON, VIRDEN, and HIXSON, JJ., agree.

HARRISON, C.J., and KLAPPENBACH, J., concur in part and dissent in part.

**BRANDON J. HARRISON, Chief Judge, concurring in part and dissenting in part**. I join parts one and two of the majority's opinion but respectfully dissent from part three. I would affirm the circuit court's decision to grant the set-off in this case based on *Douglas v. Adams Trucking Co.*, 345 Ark. 203, 46 S.W.3d 512 (2001).

KLAPPENBACH, J., joins.

*Baker Schulze Murphy & Patterson*, by: *J.G. "Gerry" Schulze*, for appellant.

*Davis, Butt, Taylor & Clark, PLC*, by: *Don A. Taylor* and *William F. Clark*, for appellee.