Cite as 2021 Ark. App. 300

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV-20-376

| | |
|---|---|
| SCOTTSDALE INSURANCE COMPANY | **Opinion Delivered** June 2, 2021 |
| APPELLANT | APPEAL FROM THE OUACHITA COUNTY CIRCUIT COURT [NO. 52CV-18-253] |
| V. | |
| LATONYA THROWER, PERSONAL REPRESENTATIVE OF THE ESTATE OF JASIAH THROWER | HONORABLE DAVID F. GUTHRIE, JUDGE |
| APPELLEE | AFFIRMED |

## MIKE MURPHY, Judge

Appellant Scottsdale Insurance Company appeals the order of the Ouachita County circuit court interpreting its insurance policy as ambiguous and finding that it was not due a credit for some payments already made. We affirm.

On February 20, 2018, three-year-old Jasiah Thrower died choking on a hot dog given to him at daycare. His estate filed suit against the daycare, its agents, and its insurance company. Eventually the parties reached a settlement for the liability limits of the daycare's general liability policy. That policy was with Scottsdale Insurance Company. At issue is $5000, which Scottsdale had already paid out in medical payments. Scottsdale says the policy limit is one million dollars, but since it had already paid $5000, the final amount paid to the estate should be one million, less the $5000. The estate argued that the policy was ambiguous regarding the applicable liability limits, and the court agreed. Construing the policy against Scottsdale, the drafter, the court found that Scottsdale should not be credited for the $5000

already paid to the estate for medical payments. Scottsdale appealed. On appeal, it argues that the circuit court erred in finding the policy language ambiguous and not crediting Scottsdale the amount already issued in medical payments. The parties have agreed to the settlement limits, and the lower court has approved the settlement in an order dated July 18, 2019. The issue before us now is all that is left to be resolved.

Our law regarding the construction of insurance contracts is well settled. The language in an insurance policy is to be construed in its plain, ordinary, and popular sense. *Farmers Ins. Exch. v. Bradford*, 2015 Ark. App. 253, at 4, 460 S.W.3d 810, 813. Different clauses of an insurance contract must be read together and the contract construed so that all of its parts harmonize. *Id.* Whether insurance-policy language is ambiguous is a question of law to be resolved by the court. *Castaneda v. Progressive Classic Ins. Co.*, 357 Ark. 345, 166 S.W.3d 556 (2004). We review questions of law de novo. *Id.*

What follows are the relevant portions of the policy. First, the declarations table:

| **Item 1.** Limits of Insurance | | |
|---|---|---|
| Coverage | Limit of Liability | |
| Aggregate Limits of Liability | $    1,000,000 | Products/Completed Operations Aggregate |
| | $    2,000,000 | General Aggregate (other than Products/Completed Operations) |
| Coverage A - Bodily Injury and          Property Damage Liability | $    1,000,000 | any one occurrence subject to the Products/Completed Operations and General Aggregate Limits of Liability |
| Damage to Premises Rented to You Limit | $       100,000 | any one premises subject to the Coverage A occurrence and the General Aggregate Limits of Liability |
| Coverage B – Personal and          Advertising Injury Liability | $    1,000,000 | any one person or organization subject to the General Aggregate Limits of Liability |
| Coverage C – Medical Payments | $             5,000 | any one person subject to the Coverage A occurrence and the General Aggregate Limits |

2

It then goes on to provide the following:

SECTION I – COVERAGES

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.  Insuring Agreement

    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" . . . But:

        (1) The amount we will pay for damages is limited as described in Section III – Limits of Insurance.

. . . .

COVERAGE C MEDICAL PAYMENTS

1. Insuring Agreement

    a.  We will pay medical expenses as described below for "bodily injury" caused by an accident.

. . . .

    b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance.

. . . .

SECTION III – LIMITS OF INSURANCE

1.  The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay . . .

2.  The General Aggregate Limit is the most we will pay for the sum of:

    a. Medical expenses under Coverage C;

    b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

    c.  Damages under Coverage B.

. . . .

5. Subject to **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

> a. Damages under Coverage A; and

> b. Medical expenses under Coverage C because of all "bodily injury" and "property damage" arising out of one "occurrence".

Also relevant, the policy defined "occurrence" as "an accident."

The appellees contend and the circuit court found that this policy language creates an ambiguity regarding which policy restriction is applicable. The "General Aggregate Limits" provides that there is up to $2,000,000 in policy coverage available for the sum of medical expenses under Coverage C, damages under Coverage A (with exceptions not applicable here), and damages under Coverage B. The appellees would have us apply this provision to conclude that we should add the medical expenses ($5,000) from Coverage C with the bodily-injury-liability limit ($1,000,000) from Coverage A and arrive at a figure less than the $2,000,000 General Aggregate Limit.

Scottsdale argues that the General Aggregate Limit is not applicable here. It explains that the General Aggregate Limit would be triggered only in the event there was more than one accident. It does not point to anywhere in its contract with the insured that says as much. Instead, it cites cases from other jurisdictions interpreting general aggregate limits in commercial general-liability policies to establish limits for multiple occurrences, while the each-occurrence-limit governs a single occurrence. *See generally Weyerhaeuser Co. v. Com. Union Ins. Co.*, 15 P.3d 115 (Wash. 2000); *Bituminous Cas. Corp. v. Iles*, 992 N.E.2d 1257 (Ill. App. Ct. 2013). Again, neither General Aggregate Limit nor Each Occurrence Limit is defined within the contract.

Scottsdale directs our attention to the fine print in the supplemental declarations. It would have us reason that even though General Aggregate Limit does not provide that it is for multiple occurrences, we should infer it because Coverage A limits itself to "any one occurrence." And because this is a single occurrence, the limit that may be paid to the estate is $1,000,000 from Coverage A.

Policy language is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one reasonable interpretation. *Nichols v. Farmers Ins. Co.*, 83 Ark. App. 324, 128 S.W.3d 1 (2003). Provisions of an insurance policy are construed most strongly against the insurance company that prepared it. *Zulpo v. Farm Bureau Mut. Ins. Co. of Ark.*, 98 Ark. App. 320, 255 S.W.3d 494 (2007). If the language of the policy is susceptible to two interpretations—one favorable to the claimant and one favorable to the insurer—then the interpretation most favorable to the claimant must be adopted. *Id.* We cannot arrive at Scottsdale's conclusion that a payment made under Coverage C is part of the Coverage A limit. To such an extent that the language on the declarations page makes that so, it is, at best, ambiguous.[1]

Affirmed.

ABRAMSON, J., agrees.

HIXSON, J., concurs.

---

[1]In addition to the concurrence's observation that even if this was not ambiguous, offsetting coverage is arguably barred under *Escobar v. A&A Orchard, LLC*, 2021 Ark. App. 128, we further note that, even strictly applying the Each Occurrence Limit formula as requested by Scottsdale, we still arrive at the $1,005,000 figure because it calls for *the sum* of Coverage A and C. The result would be the same.

**KENNETH S. HIXSON, Judge, concurring**. I agree with the majority that the language in the commercial general-liability insurance policy of Nationwide Insurance underwritten by Scottsdale Insurance Company (Scottsdale) was ambiguous and that the circuit court did not err in construing the policy liberally in favor of the insured and strictly against the insurer for that reason. *Philadelphia Indem. Ins. Co. v. Austin*, 2011 Ark. 283, 383 S.W.3d 815. However, I write separately to explain that even if the policy was unambiguous as Scottsdale alleges on appeal, I would still affirm on the basis of our recent decision in *Escobar v. A&A Orchard, LLC*, 2021 Ark. App. 128, 620 S.W.3d 534.

In *Escobar*, Miguel Escobar appealed from a judgment entered in a negligence action against his employer, A&A Orchard, LLC. A&A Orchard's insurance carrier, Southern Farm Bureau Casualty Insurance Company, paid $14,976.12 in medical bills and expenses incurred by Escobar from its no-fault medical coverage. A&A Orchard argued that it was entitled to a set-off in the amount of these payments from a jury verdict on liability coverage, which the circuit court allowed. Escobar argued on appeal that this was error, and we agreed. We specifically held that "A&A Orchard was not entitled to set off payments made to Escobar under the no-fault medical coverage of its insurance policy against the liability coverage in the same policy after the jury determined that A&A Orchard was 51 percent at fault for the incident in which Escobar lost part of his finger." *Escobar*, 2021 Ark. App. 128, at 15, 620 S.W.3d at 543. We reasoned that our supreme court had previously held that "an insurance company is prohibited from setting off one payment under its policy against another one under the same policy." *Escobar*, 2021 Ark. App. 128, at 13–14, 620 S.W.3d at 542 (quoting *Shelter Mut. Ins. Co. v. Tucker*, 295 Ark. 260, 269, 748 S.W.2d 136, 141

6

(1988)); *see also State Farm Mut. Auto. Ins. Co. v. Sims*, 288 Ark. 541, 708 S.W.2d 72 (1986). I see no appreciable difference between *Escobar* and the facts of this case. In both cases, the insurance company is attempting to set off its medical-coverage payments under one provision of its policy against its liability-coverage payments under another provision of the same policy. For the reasons explained in *Escobar*, this is prohibited, and I would affirm regardless of whether the language in the insurance policy was ambiguous or unambiguous.

*Watts, Donovan & Tilley, P.A.*, by: *David M. Donovan*, for appellant.

*Lyons & Cone, P.L.C.*, by: *Jim Lyons* and *David D. Tyler*, for appellee.